## C. C. Schelling v. County of Kankakee.

1. HUSBAND AND WIFE—*Husband's Liability to Support his Insane Wife.*—A county is not required by law to support gratuitously, at the poor house, an insane wife, returned to it by a State institution. Her support rests on the general duty of the husband to supply his wife with necessaries.

2. APPELLATE COURT PRACTICE—*Where the Appellee Fails to Call Attention to the Absence of an Assignment of Errors.*—Where the appellee fails to call the attention of the court to the fact that no errors are assigned on the record, the court may treat the case as if the errors argued were duly assigned.

Assumpsit, for care and support of an insane wife. Appeal from the County Court of Kankakee County; the Hon. EBEN B. GOWER, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

H. L. RICHARDSON, attorney for appellant.

B. L. COOPER, State's Attorney, and W. J. BROCK, attorneys for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This was a suit brought by the County of Kankakee against C. C. Schelling to recover compensation for the care and support of his insane wife, Bertha Schelling, at the county poor house. The cause was tried without a jury. There was a finding and a judgment for plaintiff for $334. Defendant appeals.

Mrs. Schelling had been legally committed to the State Hospital for the Insane in 1881 on the order of the County Court of Kankakee County, and remained there till 1897. On May 7, 1897, the officers of that institution caused her to be removed therefrom and placed in charge of the Kankakee county authorities, and notified the county clerk that this was done under the law of 1893, authorizing the removal of chronic cases from the State hospital in order that recent cases might be received. The county authorities received her and removed her to the county poor farm on that day, where she has been kept and cared for by the county continuously till this suit was begun August 13, 1900, except that defendant paid for her clothing. The county has furnished her board, medical attendance and nursing and such physical control as an insane person requires.

Section 17 of Chapter 85 of the Revised Statutes, relating to lunatics, being the act of 1893 referred to in said notice, provides for the return of a "quiet, harmless, chronic patient," from the State institution to the county from which he or she was committed, under certain circumstances, which seem to have existed in this case. Section 22, how-

ever, provides that "no patient who is violent, dangerous, or more than usually troublesome or filthy, shall be discharged from any State institution and sent back to any county farm, almshouse or insane department thereof." The main contention of the defense here is that Mrs. Schelling was violent, dangerous, or more than usually troublesome and filthy, and therefore it was unlawful for the State authorities to return her to the county authorities, and therefore defendant is not liable for her support at the county farm. The evidence as to whether she was violent, dangerous, or more than usually troublesome and filthy— that is, more so than insane patients usually are—was conflicting, and we would not be warranted by the condition of the proof in disturbing the conclusion of the trial judge on that question of fact. The county authorities were required by the State authorities to receive the patient. The county authorities did receive her and have supported and cared for her. The county is not required by law to render that service gratuitously. Her husband was liable for her support while insane and cared for by the county. This rests on the general duty of the husband to supply his wife with necessaries. (Wray v. Cox, 24 Ala. 337; Alna v. Plummer, 4 Greenl. (Me.) 258; Brookfield v. Allen, 6 Allen (Mass.) 585; Goodale v. Lawrence, 88 N. Y. 513.)

Competent proof showed the care of Mrs. Schelling by the county authorities was worth all the court allowed, and this proof was not rebutted or questioned. It is not therefore important to inquire whether the resolution of the county board in fixing a rate which it would charge was competent. There was no jury to be misled by it, and the competent proof justified the amount the court allowed. As appellee did not call our attention to the fact that no errors are assigned on the record, we have treated the case as if the alleged errors argued were duly assigned. Finding no reversible error in the record, the judgment is affirmed.