**Harry A. Bennett, Appellant, v. Lura H. Bennett, Appellee.**

**Gen. No. 11,415.**

Second District, First Division.

September 8, 1960.

Rehearing denied October 5, 1960.

 

Galbraith and Baymiller, of Peoria, for appellant.

Boyd F. Goldsworthy, of Peoria, for appellee.

SMITH, J.

This appeal comes to us from a trial de novo in the Circuit Court of Peoria County affirming an order of the Probate Court sustaining objections by a ward to certain items of disbursement in her conservator's Final Report. As a result, the requested discharge by the conservator was denied and the Final Report disapproved. The conservator appeals.

The conservator is the husband of the ward. As a result of the ward's confinement in the Peoria State Hospital, the Illinois Department of Public Welfare filed a claim against her estate in the amount of $2,768.00, under the Mental Health Code. Sec. 9–19, Chap 91½, Ill. Rev. Stat. 1959. Prior to the filing of the conservator's final report on February 25, 1958, the Probate Court had, on April 25, 1956, entered an order, approving an interim report of the conservator finding the claim of the State to be valid, and author-

izing and directing the conservator to pay it, to the extent called for by applicable regulations of the Department of Public Welfare, which was determined to be $1,640.09. Also, by the same order, the conservator was permitted to reimburse himself in the amount of $106.90 for advances he had made "for clothing and other necessities" furnished by him to his ward. The ward was not represented by a guardian ad litem at any hearing approving the interim report, nor was she served with notice that the report had been filed and approval sought. The interim order was entered ex parte. We recite this fact, not for the reason that it is, in our view of the case, especially significant, but simply to negate any implication that it was not ex parte. It really makes no difference.

Under "Items Paid Out", in the Final Report, appears the amount $106.90, identified as refund of moneys to the conservator spent for the ward, and $1,640.09 paid on the claim of the State of Illinois. The Report concluded with a request for approval, and the discharge of the conservator, to which the wife duly filed her objections.

Her position is simply that her husband is liable, in the final analysis, for the cost of her confinement in the Peoria State Hospital, and for the $106.90 refund item, representing expenditures for clothing and other necessaries, and therefore, he should be required to reimburse her estate in these amounts. She relies generally on the common law proposition that a husband is responsible for his wife's necessaries. The husband counters with the argument that such payments were made in the ordinary course of administration and were specifically approved by the Probate Court, that he was duty bound to abide thereby, and he should therefore be discharged, and his Report approved, since he did naught but do as he was directed by the Court.

■ The conservator agrees that there is a common law duty on a husband to furnish his wife with necessaries, which includes support, but denies that the expense incurred by a wife's confinement in a State Hospital falls within the category of necessaries, for the reason that such expense is but a creature of statute, and does not constitute support for which a husband is responsible. He further argues that the liability must fall where the statute puts it, which is on the estate of the patient. In other words, to the extent that the estate is sufficient, it must bear the burden, and this is so, he says, because the statute makes it so. He buttresses further his contention of nonliability by citing the Family Expense Statute (Sec. 15, Chap. 68, Ill. Rev. Stat. 1959) arguing that his wife thereby has a joint responsibility with him, and that if it is applicable, the claim was properly paid from her funds.

It is true that the Mental Health Code (Sec. 9–19, Chap. 91½, Ill. Rev. Stat. 1959) creates a liability in the first instance in favor of the State against the estate of the patient, "for the payment of sums representing maintenance charges for the care, treatment, detention and training of such patient in a State Hospital . . .". The paragraph further provides that if the estate is insufficient, the spouse is liable. In Sec. 9–21, the Department of Public Welfare is authorized to investigate the financial condition of such persons, "to pay sums representing maintenance charges, and for such purposes to set a standard as a basis of judgment of ability to pay", if at all. If the latter status is determined (inability), then the payments representing maintenance charges for the patient are borne by the State. Secs. 9–21, 9–25, Chap. 91½, Ill. Rev. Stat. 1959.

It is apparent, of course, that if the patient's estate is sufficient, it is liable in the first instance, and no

28

duty devolves on others, so far as the State is concerned. But because the State looks first to the estate of the patient, it does not follow that the estate is precluded from seeking reimbursement from others who may be liable to it. The statute renders the estate of the patient liable to the State, it does not render it liable absolutely and in all events, denying to it such rights as it may have to recoup from others. Because the liability is statutory in origin, and something new, does not mean that older and more overriding concepts of liability must give way, their impact spiked, absent some expression in the statute delimiting the new liability.

The same can be said as to the Family Expense Statute, which provides, so far as here relevant:

> "the expenses of the family . . . shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and in relation thereto they may be sued jointly or separately."

■ What words here cut down and narrow the common law in respect to the duties owed a wife? All this statute does is give to third parties for expenses of the family a remedy against them both, and that is all. To ascribe a larger import is to deny the meaning of plain words and accepted canons of construction. This we will not do. In 41 Corpus Juris Secundum 513, Husband and Wife, Sec. 50, it is stated:

> ". . . Notwithstanding the existence of a statute in the jurisdiction rendering both husband and wife liable to third persons for necessaries or family expenses, as considered infra Sec. 64, the liability of the husband to a third person for goods purchased by the wife may still be placed on a breach of his common law duty to provide neces-

29

saries; and as between husband and wife, the duty to furnish necessaries still rests on the husband."

■■ We conclude that nothing in either the Mental Health Code or the Family Expense Statute detracts from the common law duty of a husband to supply his wife with necessaries, which, of course, includes support. A common law rule so firmly fixed in the legal firmament as this one, will not be by us so lightly cast aside. Statutes of this kind, having for their purpose the fixing of status relative to the obligations of man and wife to third parties, be they public or private, have nothing to do with the obligations that may run from man to wife.

We thus come to an inquiry of whether the cost of maintenance of a wife in a State Hospital falls within the category of necessaries. The conservator argues that the liability created by the Mental Health Code does not constitute support, and hence there is no right to reimbursement by his wife from him.

To this, we cannot agree. While we are not bound by everyday descriptive characterizations as such, it is not without some moment, that the expense here was incurred while the ward was in a "hospital", albeit a hospital operated by the State, but none the less a hospital, as the term is commonly understood. A hospital is a place for the care of the sick whether in mind or body. A State Hospital in this respect is no different from a private one. We do not need to belabor the point, except to say in passing, that the Department of Public Welfare maintains the Peoria State Hospital, and others of like character, for those who are either mentally ill, or in need of mental treatment. Its claim was for the expense it incurred in caring for, treating, detaining and training appellant's wife during her incompetency. While no case has been cited to us holding that the expense of hospital care for treatment,

detention and training at a State operated institution for the mentally ill, falls within the category of necessaries, we have no hesitancy in so holding. It is apparent that this would be true as to private hospitals, and we can see no valid distinction between public and private institutions in this regard.

That hospital bills fall within the meaning of necessaries is so apparent that it hardly calls for discussion. Where else would a husband's duty be more pressing? In Schelling v. County of Kankakee, 96 Ill. App. 432, 434, the wife had been committed to a hospital for the insane. Thereafter, because her condition was classified as chronic, she was transferred to the County Poor Farm, where the County, for three years, cared for her, furnishing board, medical attendants, and nursing. The County sued the husband. We quote:

> ". . . The County authorities were required by the State authorities to receive the patient. The county authorities did receive her and have supported and cared for her. The county is not required by law to render that service gratuitously. Her husband was liable for her support while insane and cared for by the county. This rests on the general duty of the husband to supply his wife with necessaries. (Wray v. Cox, 34 Ala. 337; Alna v. Plummer, 4 Greenl. (Md.) 258; Brookfield v. Allen, 6 Allen (Mass.) 585; Goodale v. Lawrence, 88 N. Y. 513) . . . ."

The fact that the wife may have ample means to finance such necessaries, in no wise alters or detracts from the responsibility and obligation of the husband to her. The responsibility or duty does not, to state it another way, depend upon the inadequacy of the wife's means but on the marriage relation. American Milling Co. v. Industrial Board, 279 Ill. 560, 564, 117 N. E. 147.

31

■ The State in imposing a liability upon the estate of a patient does not thereby relieve others, whose legal obligation it may be, to take up this burden. Because a public liability is newly created as a private one, is of no importance in determining whether it constitutes support or not. The mould of meaning of the term, "necessaries" can expand or shrink with the times and new legislation. Some things in life are free, but they are none the less necessaries. The price tag, if there is one, is beside the point. Prior to the creation of this private liability, there was nothing for anyone individually to pay. Thus support in this context was not an obligation of a husband, but it was none the less support. It was just that somebody else provided it—the State of Illinois. Because that liability has been partially shifted, does not alter the basis of the liability, and if the basis—in this case hospitalization —is properly within the category of necessaries, pre-existing rules of legal responsibility place the burden on the husband. While the statute casts the burden initially on the recipient, it certainly does not stop the recipient if she has a husband, from looking to him for reimbursement. Here the recipient is a wife, and to a wife a husband owes the duty of support. Thus, quite properly, her initial burden shifts to him.

We fail to see how the prior interim approval of the Probate Court authorizing payment from the ward's estate, in any way effects the husband's obligation to reimburse it. The payment was proper. The conservator quite properly sought the Court's approval in paying it, and the Court did the proper thing in granting its approval. But because, by statute, the liability first devolved upon the estate, does not mean that the conservator is relieved from seeking reimbursement from others who may be liable. The fact that he must look to himslf, only heightens the obligation, for he stands here in the position of a fiduciary in more ways than

32

one. If third parties were liable for the expense, it would have been his duty to pursue them. His duty is no less because the liability is his.

██ Many instances come to mind where a conservator in the first instance must tax his ward's estate for asserted liabilities, but having paid, he can then recoup from others. An obvious example would be an insurance contract insuring the expense of his wife's disability. His plain duty would be to pay the bill, and then seek reimbursement from the insurer. What if the ward had been a guarantor on a note, on which the maker had defaulted? It would be the conservator's duty to pay and then to sue the maker. The fact that he may have paid with the approval of the Probate Court, would certainly not lessen his duty to pursue the insurer or maker, and most assuredly it would not immunize them from liability. The maker or insurer could not plead (as indeed the conservator as husband does here), the prior sanction of the Court, for they are total strangers. In the instant matter, the husband qua husband is likewise a stranger to the court's approval. As the conservator he was a party, and could plead the prior approval if his payments as conservator were being questioned. It is not. The wife casts no aspersion on his action in paying the State or himself, as even being hasty, much less unlawful. She does not question her husband's acts as conservator in paying it, but she does question her conservator in not seeking reimbursement from her husband. On this she is clearly right. The fact that her conservator is also her husband accentuates his duty to reimburse her estate.

██ Not only may she question her conservator thusly, but she can question him in the conservatorship proceeding. Her husband-conservator argues that being restored, the question can be litigated elsewhere, by a suit on her behalf. He views the duties of his con-

33

servatorship too lightly. More is required of a fiduciary than to say to his ward: Sue me, if I have done wrong. His duty is to file a final report and to properly account. This he had not done. Until he does so, his prayer for discharge and approval must be denied. A proper accounting must necessarily include reimbursement by him on the two items "Paid Out". They were for necessaries, and on him, as husband, falls the obligation. His final argument of denial of trial by jury can be answered simply by stating that there has been no denial. In proceedings such as these, no right obtains. The order appealed from is affirmed.

Affirmed.

McNEAL, P. J. and DOVE, J., concur.