*In re* ESTATE OF BLANCHE HAYDEN, Incompetent.—(RICHARD E. GEPPERT, Petitioner-Appellant, *v.* GERTRUDE EDDINGTON, Conservator of the Estate of Blanche Hayden, *et al.*, Respondents-Appellees.)

Fourth District    No. 17183

Opinion filed March 25, 1982.—Rehearing denied April 27, 1982.

TRAPP, J., concurring in part and dissenting in part.

Charles R. Douglas, of Granite City, for appellant.

John P. Madden, of Gillespie, for appellees.

Phelps, Carmody & Kasten, of Carlinville (Carl E. Kasten and Brent A. Cain, of counsel), guardian ad litem.

JUSTICE MILLS delivered the opinion of the court:
Conservatorship—of person and estate.
Conservatorship terminated.
Who now has standing to question the actions of the conservators?
No one—other than the now-competent former ward.
In 1976, Blanche Hayden was declared an incompetent; her sister, Gertrude Eddington, was appointed conservator of her *estate*, and her daughter, Sylvia Williams, was appointed conservator of her *person*. On July 14, 1980, Richard Geppert—Blanche's grandson—filed a petition seek-

ing, *inter alia*, revocation of the conservatorship. Gertrude and Sylvia filed a general denial of the matters alleged in the petition, and the matter was set for hearing on September 18, 1980.

At that hearing, the conservators' attorney stated that both Gertrude and Sylvia agreed that a conservatorship was no longer necessary and that Blanche was competent. Blanche's guardian ad litem stated that he, too, had reached the conclusion that Blanche was competent.

Since all parties agreed that the conservatorship should be terminated, the court so ordered and directed that an accounting be filed within 45 days. Geppert's attorney reminded the court that the petition also alleged various acts of malfeasance by the conservators and asked that he be allowed to pursue discovery. The court stated that any discovery that it would allow should certainly not occur until after the conservators' final accountings were filed.

Subsequently, Sylvia filed her final report as conservator of the person, and Gertrude filed a "preliminary report" as conservator of the estate. Thereafter, discovery depositions were taken of both Sylvia and Gertrude. On April 8, 1981, a hearing was held in this matter, and Judge Howard Lee White immediately demanded to know what interest Geppert had in Blanche's estate that would allow him to continue as a party. In the discussion that ensued, the court learned that Blanche's estate owed Geppert $992.10 as a result of prior litigation. The court ordered this sum to be paid within five days. Geppert's attorney argued that Geppert should be allowed attorney fees for proceedings that occurred before the time when Gertrude and Sylvia conceded that a conservatorship was no longer needed. He testified that $1,800 was owed him for services during that time.

. Judge White ruled that Geppert had no interest in the estate except as a creditor. As such, he could have filed a claim for $992.10 and along with that claim could have alerted the court that Blanche was competent. Had he followed that procedure, concluded the court, he would have been entitled to approximately $300 in attorney fees. Thus, the court ordered the estate to pay Geppert the $992.10 plus $300 attorney fees but went on to find "that Mr. Geppert has no further interest in this proceeding and the court on its own motion restrains him from filing anymore proceedings in this case." Judge White assured Geppert's attorney that this ruling also precluded his filing a citation petition.

I

■■ Geppert initially argues that the court erred in not holding an evidentiary hearing on his petition on September 18, 1980. As authority he cites section 11a—21(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—21(a)):

"The court shall conduct a hearing on a petition filed under Section 11a—20 [dealing with, *inter alia*, petitions to revoke letters of guardianship] * * *."

Geppert, however, has waived any error the court may have committed. His attorney not only failed to ask for a hearing on that date; he also specifically agreed to the court's revocation of the conservatorship without holding a hearing as to Blanche's present condition:

"THE COURT: Gentlemen, I have before me, again, a petition to revoke the letters of conservatorship, setting up the reasons why they should be revoked and the guardian ad litem agrees it should be allowed and the conservator agrees it should be allowed.

Petition is allowed and the conservator will account to this court within 45 days for their actions.

[Conservators' attorney]: Fine.

[Geppert's attorney]: Your Honor, that's fine * * *."

Under these circumstances, it can hardly be said that Geppert has preserved this issue for appeal. Furthermore, where all the parties obviously agreed that Blanche was competent and that the conservatorship was no longer necessary, it would not serve any useful purpose for the court to go through the motions of holding a hearing. Also, section 11a—21(a) does not entitle Geppert to a hearing as to the allegations of malfeasance contained in his petition. That section calls for a hearing only upon a petition filed under section 11a—20, which does not provide for petitions alleging impropriety by guardians.

## II

■■ Geppert next attacks the trial court's conclusion that following the revocation of the conservatorship on September 18, 1980, he no longer had any interest in the litigation. It should initially be observed that Geppert clearly had standing to file his revocation petition:

"Upon the filing of a petition *by or on behalf of a disabled person* or on its own motion, the court may terminate the adjudication of disability of the ward, revoke the letters of guardianship of the estate or person, or both, or modify the duties of the guardian * * *." (Emphasis ours.) (Ill. Rev. Stat. 1979, ch. 110½, par. 11a—20(a).)

But we conclude that *following* the revocation of the conservatorship, Geppert had no further interest in the estate, except as a creditor for the $992.10.

Once Blanche was declared competent, it was her decision alone whether to proceed against Gertrude and Sylvia for any alleged improprieties committed while they were in office. After September 18, Blanche was, as a matter of law, capable of representing her own inter-

ests; Geppert had no basis for attempting to represent those interests. It was up to Blanche, therefore, based upon her personal feelings and convictions, to decide whether Gertrude and Sylvia should be required to answer for any alleged improper conduct.

Although we are unable to find any Illinois case which involves the precise question as to whether a person in Geppert's position retains party status following an adjudication of competency, we find that not only common sense but also various statutory and case law authority points inexorably to the conclusion that Geppert lost standing to represent Blanche's interests once the conservatorship was revoked. Section 24—11 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 24—11) provides that within 30 days after the termination of his office, the representative of a ward's estate must file a verified account of his administration of the estate. Notice of the hearing on this final account must be given to the ward (if he is living) and to any other person to whom the court directs. This provision suggests that a former conservator is accountable only to his former ward and the court, and not to persons who themselves seek to intervene in the proceedings and protect the former ward's interests.

Also relevant is section 24—18 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 24—18):

> "A representative and the surety on his bond are liable to a successor representative, to a co-representative or to any person aggrieved thereby for any mismanagement of the estate committed to his care. The successor representative, the co-representative or the person so aggrieved may institute and maintain an action against the representative and the surety on his bond for all money and property which have come into his possession and are withheld or may have been wasted, embezzled or misapplied and no satisfaction made therefor."

This provision is not necessarily exhaustive in its list of persons to whom a former representative is liable; indeed, it does not state that a former representative is liable to his former ward although that is obviously the law. *In re Estate of Ekiss* (1963), 40 Ill. App. 2d 1, 188 N.E.2d 348; *Bennett v. Bennett* (1960), 27 Ill. App. 2d 24, 169 N.E.2d 172.

However, it would seem that the legislature, by using the expression "any person aggrieved," intended to put some limitation upon who could require a former representative to answer for his actions. Geppert is clearly not a "person aggrieved" by the mismanagement of this estate. The record indicates that he has been paid the $992.10 owed him; his relationship with the estate as a possible future heir of Blanche is too attenuated to put him within the scope of a "person aggrieved" by the conservators' actions.

*Hoff v. Meirink* (1957), 12 Ill. 2d 108, 145 N.E.2d 58, also lends some support to our conclusion that Geppert lacked standing following revocation of the conservatorship. Meirink was adjudged mentally incompetent, and Hoff was appointed as her conservator. Hoff obtained court permission to sell Meirink's mineral rights, and the sale was held. The following sequence of events then occurred:

(1) The court found Meirink competent to manage her property.

(2) The court approved the sale.

(3) The court revoked the letters of conservatorship.

The supreme court concluded that Meirink should have been allowed to vacate the court's order approving the sale. The court said that following the restoration to competency, the probate court no longer could exercise its usual supervisory power over Meirink's property. The court said that the Probate Act could not be construed to authorize a court to interfere with the property rights of a restored ward and that the order approving the sale had deprived Meirink of such rights. Although this case is not directly on point because it deals with a *court's* authority to enter an order concerning a former incompetent's property, it is authority for the general proposition that a restored ward becomes reinvested with the rights he lost when adjudicated an incompetent. Prior to Blanche's adjudication of incompetency, Geppert would have had no standing to proceed against a third party who had committed some wrong against Blanche. Blanche's restoration to competency returned matters to that state of affairs and again made it impossible for Geppert to assert Blanche's rights and represent her interests in court.

Cases from other States support the conclusion we reach today. In *Poling v. City Bank & Trust Co.* (Fla. App. 1964), 167 So.2d 52, Poling was adjudicated incompetent in 1959. On January 9, 1960, the attorney for his guardian filed a Workmen's Compensation claim. On July 22, 1960, Poling was declared competent. The attorney for the guardian continued to pursue the Workmen's Compensation action, and eventually an award was obtained. In 1963, the guardian and its attorney were awarded fees in connection with pursuing the claim. On appeal this award was reversed, for the court concluded that no statutory basis could be found for allowing fees for services rendered in behalf of a ward after the ward has been declared competent. "Upon Poling's being declared competent he was free to make any arrangement he desired, either with the attorney who had represented the Guardian or with other counsel, or to abandon said efforts if he so elected." 167 So.2d 52, 53.

Similarly, Blanche had the sole decision—following the hearing of September 18, 1980—whether to pursue the possible claim against Sylvia and Gertrude. See also *People ex rel. Smith v. County Court* (1940), 106 Colo. 95, 102 P.2d 476, wherein the court said that following restoration to

competency, the county court lacked any further jurisdiction to enter orders controlling the former incompetent's property, and *Tipton v. Tipton* (Tex. Civ. App. 1940), 140 S.W.2d 865, in which the court stated that once an incompetent has been restored to sanity, the guardian no longer has power to represent the estate.

### III

Geppert also contends that the trial court erred in ruling that he could not file a citation petition in this matter. We agree. Section 16—1(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 16—1(a)) provides:

> "Upon the filing of a petition therefor by the representative or by any other person interested in the estate or, *in the case of an estate of a ward by any other person,* the court shall order a citation to issue * * *." (Emphasis ours.)

Thus, although in other kinds of estates a person must be "interested" in order to file such a petition, the rule is otherwise as to the estate of a ward. In such a matter, *any person* may file a petition. Thus, the lack of interest in Blanche's estate could not be a ground for precluding Geppert from filing a citation petition.

We conclude, however, that under the circumstances of this case the court committed harmless error in "restraining" Geppert from filing a citation petition. Shortly after the April 8, 1981, hearing at which the court concluded that Geppert no longer had standing in this matter, Blanche died. There now exists a decedent's estate, and the conservators and guardian ad litem both concede that Geppert is sufficiently "interested" in that estate to be a party in it, whether this status arises from his being a legatee under a possible will, an intestate heir, or a person who will file a will contest.

Geppert's standing in the decedent's estate in fact gives him all the relief he has sought in this proceeding and the standing he was properly denied following the finding that Blanche was competent. If the representative of the decedent's estate fails to act in the best interests of the estate (*e.g.,* by unreasonably failing to proceed against Sylvia and Gertrude for improprieties committed as conservators), then Geppert can file a citation petition, and "the court may appoint a special administrator to represent the estate." (Ill. Rev. Stat. 1979, ch. 110½, par. 16—1(c).) The conservators formerly owed an accounting only to Blanche and to the court. Now they owe the accounting to her decedent's estate, wherein Geppert has standing. Thus, Geppert has not been harmed by the trial court's ruling that he could not file a citation petition in the guardianship estate, and we therefore find it unnecessary to reverse this case because of that erroneous ruling.

## IV

Prior to the April 8, 1981, hearing, Geppert filed a motion for attorney fees covering the expenses incurred prior to revocation. of the conservatorship on September 18, 1980. At the April 8 hearing, Geppert's attorney, Charles R. Douglas, testified that Geppert's expenses for legal fees prior to the revocation were $1,800. He testified as to the number of hours he had spent in preparation for what was expected to be a contested hearing and the time he had spent in court prior to—and at the time of— the hearing. Douglas was not cross-examined as to these facts, and the conservators made no effective objection to the claim.

■■ The trial court, however, allowed only $300 in attorney fees, concluding that Geppert should have simply filed a claim with the estate for the $992.10 owed him. Had he done that, said the court, Geppert would likely have incurred approximately $300 in attorney fees, and he was therefore allowed only that amount. The record on appeal indicates that soon after the April 8 hearing, checks for $992.10 and $300 were sent to Geppert and his attorney, respectively, and that both checks have been negotiated and paid.

We conclude that under these circumstances Geppert has waived the right to assert error as to the sufficiency of attorney fees allowed in the trial court. In *United Typesetting Co. v. Congress Trust & Savings Bank* (1934), 278 Ill. App. 224, the receiver of the bank had sufficient funds to pay all the bank's creditors. Thereafter the receiver had around $25,000 left, to be used to pay costs and fees. An order was entered on the receiver's final account providing for $10,000 receiver's fees; $4,839.66 receiver's attorney fees; and $10,000 creditors' (appellants') attorney fees. The receiver subsequently filed cancelled checks showing payment of these amounts. After the creditors' attorneys had cashed their $10,000 check, they filed a notice of appeal from that portion of the order fixing attorney fees and receiver's fees. The court said that the creditors' attorneys (who were the real parties in interest) had waived their right to allege error in the decree by accepting the benefits of the order appealed from by negotiating their check.

The reasoning of *United Typesetting* is directly applicable to this case: attorney fees were allowed, the attorney negotiated a check in the amount specified in the trial court's order, and this check was paid upon presentment. When the benefits of an order have, in this manner, been reaped, a party cannot argue on appeal that its harvest was inadequate.

Geppert calls our attention to the following language from *United Typesetting Co.*:

> "[O]ne cannot avail himself of that part of a decree which is favorable to him, accepting its benefits, and then prosecute an appeal to

reverse such portion of the decree as is against him *when the acceptance of the benefit from the one part of the decree is totally inconsistent with the appeal from the other part.*" (Emphasis ours.) (278 Ill. App. 224, 226-27.)

Geppert contends that the case at bench falls within the "exception" to *United Typesetting Co.* which is suggested by the emphasized language above. His position is that the $300 allowed to him was for pursuit of the $992.10 claim against the estate and that the acceptance of the $300 was not "totally inconsistent" with his assertion that he should have received $1,800 for attorney fees incurred in connection with obtaining revocation of the conservatorship.

Geppert, however, misconstrues the nature of the order allowing $300 in attorney fees. The trial court *measured* Geppert's attorney fees on the basis of the costs he would have incurred in pursuing the claim. However, it did not *allow* fees for pursuit of the claim; indeed, the court would have acted improperly had it required the estate to pay the attorney fees of its creditor. Rather, the trial court allowed the $300 attorney fees for work done in seeking revocation of the conservatorship. Thus, the acceptance of the $300 was totally inconsistent with the argument that this amount was insufficient, and this argument has therefore been waived.

## V

We cannot—without comment—overlook certain improprieties contained within the briefs filed in this case. Geppert's attorney in particular has repeatedly used intemperate and vituperative language which in no way furthers his client's cause and is totally unsuitable in a document filed in any court. For example, he has described the conservators as pursuing a "greedy and hateful conspiracy against Richard Geppert," has characterized them as having "greedy palms," and has labeled them as "frequent and incessant liars." Perhaps goaded by such remarks, conservators' attorney has stated that "the hallmark of [Geppert's] position throughout this matter has been greed. * * * This estate should not be kept open in order for [Geppert] and his attorney to vent their spleen." The guardian ad litem, however, has commendably refrained from engaging in any such objectionable and counterproductive remarks.

Although the Anglo-American system of jurisprudence relies upon strong advocacy as the best means of arriving at truth and justice, it is totally improper for an advocate to make the kinds of remarks recited in the preceding paragraph. Such statements detract from the logic and reasoning of the party making them and naturally cause a court to be initially repulsed by that party. It is then necessary for the court to attempt to ignore the statements in an effort to be fair to the party in whose behalf they were made, without at the same time bending over so far

backward as to be unfair to the other party. It is simply not good practice of law to put a court into such a position. *Webb v. Quincy City Lines, Inc.* (1966), 73 Ill. App. 2d 405, 219 N.E.2d 165.

Mercifully, such excessive verbal assaults as we have been forced to read here are rare in appellate briefs. We trust they remain so.

Affirmed.

GREEN, P. J., concurs.

JUSTICE TRAPP, concurring in part, and dissenting in part:

I concur in parts I, II, and III of the opinion and concur in the results reached in part IV.

In addition to seeking termination of the conservatorship, Geppert made a series of allegations of improper conduct in administering the ward's estate. A claim for $1800 for attorney fees is based upon his alleged preparation to "prosecute" those allegations by taking depositions and otherwise. It appears that neither the statute nor the case law support such claims. I dissent from part IV of the opinion insofar as it turns upon waiver of the claim and so implies that Geppert may have been entitled to any fees for such work.

The statute does not support the claim. Sections 11a—20 and 11a—21 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, pars. 11a—20, 11a—21) provide the procedure. The former section authorizes "the filing of a petition by or on behalf of a disabled person" to terminate adjudication of a disabled person, revoke letters of guardianship, or modify the duties of the guardian.

Section 11a—21(a) provides that "the court shall conduct a hearing on a petition" so filed. The section continues to provide that the court may appoint counsel for the ward, and if the latter's interest will be best served shall appoint counsel upon the ward's request, and provides that the court may allow the guardian ad litem and counsel so appointed reasonable compensation.

The provisions of the latter section rationally require that the attorney, or guardian ad litem, appointed by the court, shall conduct the proceedings necessary to resolve matters raised in the petition so filed. Taken together, the two sections reasonably mean that while a person "acting in behalf of a disabled person" may petition the court, that section does not bestow the status of a plaintiff or prosecutor upon that person to conduct the litigation and to be allowed fees therefor.

In *In re Estate of Freund* (1978), 63 Ill. App. 3d 1, 3, 379 N.E.2d 935, 936-37, the court stated:

" 'The duty of protecting estates is cast by the law upon those

whom the law designates as their proper representatives, and it can not be tolerated that other parties shall involve them in the costs and expenses of litigation, under the pretext that the estate will thereby be benefited' (*Ex parte Allen* (1878), 89 Ill. 474, 475, 476.)"

Upon this record, Geppert had not established that he had procured any benefit or enhanced the value of the ward's estate within the context of *In re Estate of Freund* (1978), 63 Ill. App. 3d 1, 379 N.E.2d 935. There, the respective estates of a husband and wife were without funds for closing. Attorneys acting for a co-executor of the husband's estate, who was also a daughter concerned with the wife's estate, had liquidated assets and procured the closing of the two estates. The trial court found that the services had benefited each of the estates, and ordered payment to the attorneys "its portion of the fees to be awarded from the estate." It thus appears that the particular services established were to be paid as a part of all of the attorney fees awarded for administering the estates. The court said:

> "Where legal services are not in the interest of the estate, counsel fees must be rejected. (*In re Estate of Lipchik* (1975), 27 Ill. App. 3d 331, 326 N.E.2d 464; *In re Estate of Breault* (1965), 63 Ill. App. 2d 246, 211 N.E.2d 424.) However, where the heirs' action against the executors and trustees of an estate enhance the value of the estate, the heirs are entitled to have their attorneys' fees paid from the estate; the sum saved being an important factor to be used in determining the amount of the award. (See *Levi v. Stern* (1944), 324 Ill. App. 82, 57 N.E.2d 228 (abstract).) The amount of the award is not an issue here and therefore we offer no opinion on it." 63 Ill. App. 3d 1, 3, 379 N.E.2d 935, 937.

While Geppert has filed allegations of misconduct by the respective conservators, this record does not disclose any attorney fees fixed for services to that estate, and would result in a piecemeal consideration of fees by the court. There is a complete absence of proof of the alleged misconduct, and nothing of record establishes enhancement of value, or other benefit, to the estate by reason of such allegations. In such context, an award of fees to Geppert is premature, at best.

I would affirm for such reasons.