(No. 74267

*In re* ESTATE OF DAVID STEINFELD, a Disabled
Person (Joseph Steinfeld, Appellant; Rosemarie
Hoddick, as Guardian, Appellee).

*Opinion filed January 20, 1994.*

2

FREEMAN, J., specially concurring.

Court of Cook County, the Hon. Robert D. Ericsson, Judge, presiding.

Joel L. Widman, of Widman, Goldberg & Zulkie, Ltd., of Chicago, for appellant.

Joel D. Teibloom, of Flamm, Teibloom & Laytin, Ltd., of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

On June 8, 1989, David Steinfeld (David) was adjudicated a disabled adult by the probate division of the circuit court of Cook County pursuant to the Probate Act of 1975 (the Act) (Ill. Rev. Stat. 1989, ch. 110$^1$/$_2$, par. 11a—1 et seq.). Rosemarie Hoddick (Hoddick) was appointed plenary guardian of David's person. Two years later, on June 7, 1991, David's brother, Joseph Steinfeld (Joseph), filed a motion to vacate the guardianship order on the ground that the order was void because certain statutory requirements were not followed prior to its entry. Following a hearing, the trial court denied Joseph's motion to vacate and held Joseph and his wife, K. Janet Steinfeld (Janet), in contempt of court for their failure to return David to Illinois following a court-approved visit to the Steinfelds' home in California. The appellate court affirmed the denial of Joseph's motion to vacate the guardianship order, and affirmed the finding of contempt against Joseph. However, the appellate court reversed that portion of the circuit court's order finding Janet in contempt, and remanded the cause for further proceedings on a separate, pending petition to remove Hoddick as guardian for cause. (233 Ill. App. 3d 715.) Joseph appeals from the orders denying his motion to vacate the order adjudging David disabled and holding Joseph in contempt of court.

## BACKGROUND

On April 14, 1989, David's mother, Lotte Steinfeld (Lotte), filed a petition alleging that David, then age 45, was a disabled person as a result of having Down's Syndrome since birth. The petition requested appointment of Hoddick as guardian of David's person on the alleged basis that David lacked sufficient understanding and capacity to make or communicate responsible decisions regarding the care of his person. Attached to the petition was a list of the names and addresses of David's nearest living relatives, who consisted of Lotte, Joseph and another brother, Thomas. Notices of the petition were timely mailed to Joseph at his residence in California and to Thomas in Oregon, and David was personally served with summons at the Little City residential facility where he lived. The hearing was set for June 8, 1989.

Prior to the hearing, Lotte, then age 87, moved to California to be near Joseph and Janet in lieu of entering a nursing home. The only persons present at David's hearing were Lotte's attorney and Hoddick. The attorney and Hoddick informed the trial court that David lived at Little City and regularly spoke and visited with Hoddick, who was a friend of Lotte and had acted as "kind of a subguardian" for David for several years. Counsel depicted David as being childlike, stating, "You will realize why he needs a guardian. When you see David and talk to him, think of him as a child, although he is in his late forties; when you talk to him it totally escapes me that he is actually an adult. He has an IQ of 62; it says combined IQ, verbal and functional. He acts like a fourteen year old boy." Counsel described David's enjoyment of playing games such as "policeman," and remarked that David was never on time for his part-time janitorial job at Little City.

When a court clerk brought to counsel's attention that the petition was not accompanied by a medical

report, counsel stated that he had not believed such a report was necessary because David had had Down's Syndrome since birth. The trial judge entered the guardianship order but directed counsel to bring in a medical report "for the record." The court further ordered that a statement be mailed to David informing him of his future right to petition for discharge of the guardian or modification of the guardianship order. The court also ordered Hoddick to file a report on David's condition by July 15, 1989, and thereafter to file semi-annual reports, copies of which were to be mailed to David's mother and brothers.

On July 11, 1990, Lotte and Joseph filed a petition for removal of Hoddick as guardian on the ground that her actions were contrary to David's best interests. The petition also requested appointment of Lotte and Joseph as successor co-guardians. The petition was assigned to a different judge than the one who rendered the original disability and guardianship orders. The successor trial judge immediately entered an order appointing a guardian *ad litem* for David and forbidding David's removal from Little City by any of the parties. The matter was continued to August 31, 1990, and several times thereafter.

On December 20, 1990, Lotte filed a motion to be voluntarily dismissed from the July 1990 petition for Hoddick's removal as David's guardian. Simultaneously, Joseph filed a motion for leave to file an amended petition naming Janet as an additional party-petitioner. The amended petition realleged Hoddick's unfitness to serve as David's guardian and her failure to prepare reports on David's condition, sought an accounting of David's earnings, and requested that Joseph and Janet be appointed successor guardians. Both motions were continued to January 18, 1991.

On December 21, 1990, the trial court granted an

earlier motion by Lotte and Joseph for permission to bring David to their home in California for a Christmas visit, conditioned upon the deposit by the Steinfelds of a $10,000 cash bond with the guardian *ad litem*. Return of the bond was contingent upon the Steinfelds' return of David to Little City by January 15, 1991.

A copy of an order stamped by the clerk of the circuit court, which was omitted from the record but which has been appended to Hoddick's brief in this court, reveals that on January 18, 1991, the trial court granted Lotte's motion for voluntary dismissal. The court also granted Joseph's and Janet's motions to add Janet as a party-petitioner, to file an amended petition, and for return of the bond due to their safe and timely return of David to Little City.

On March 19, 1991, Joseph and Janet filed a motion for permission to take David to California for a spring visitation. The motion was granted upon the condition that the Steinfelds post another $10,000 bond, return-able only by court order upon David's return to Little City no later than April 16, 1991.

On April 17, 1991, a petition for an injunction prohibiting harassment, signed by David as petitioner and by counsel for David, and naming Joseph and Janet as defendants, was granted by the superior court of California. The order prohibited, *inter alia*, David's removal from California without the advance approval of the clinical psychologist and the psychiatrist who, a few days earlier, had interviewed David and prepared psychological reports which were attached to the petition. On April 22, David and Lotte filed a petition in the California court requesting that Lotte and Joseph be appointed limited conservators of David.

On April 18, 1991, Hoddick filed an answer to the amended petition of December 20, 1990. That same day the trial court entered a rule to show cause why the

Steinfelds should not be held in contempt for failing to comply with the court's order to return David to Little City by April 16, 1991.

On June 7, 1991, Joseph filed the motion, which is the subject of this appeal, to vacate the June 8, 1989, guardianship order. The basis of the motion was that the order was void because the trial judge failed to follow the requirements set forth in the statute prior to adjudicating David disabled. On August 22, 1991, the court conducted a hearing, which was attended by counsel for the Steinfelds, Hoddick, Hoddick's attorney, the guardian *ad litem* and an attorney from the office of the public guardian. Following argument by all counsel, the trial court denied Joseph's motion to vacate the 1989 disability and guardianship order. The court ruled that the original hearing was sufficient and that all information subsequently presented to the court concerning David, including the psychological evaluations performed in California, supported the original finding of disability. The court also found Joseph and Janet in civil contempt of court for wilfully failing to return David to Illinois, ordered the forfeiture of their $10,000 bond and imposed a fine of $50 per day, beginning August 22, 1991, until their return of David to the court or Little City. The appellate court affirmed the denial of Joseph's motion to vacate the guardianship order and the contempt finding against him, but reversed the contempt order against Janet, and remanded the cause for further proceedings on the December 1990 petition by Joseph and Janet to remove Hoddick as guardian of David for cause.

## DISCUSSION

Initially, we consider Hoddick's contention that this appeal should be dismissed for lack of standing by Joseph and Janet. It is Hoddick's position that they were

not parties to the original adjudication proceeding, and because that proceeding did not affect their substantive rights they lacked standing to contest the validity of the guardianship order and, consequently, to appeal from the denial of the motion to vacate it.

We note that although Janet joined in the December 1990 petition for Hoddick's removal as guardian, the June 7, 1991, motion to vacate the original guardianship order was brought by Joseph alone and only Joseph was named in the portion of the trial court's order denying it.

The Act states that the circuit court may adjudge an individual a disabled person "[u]pon the filing of a petition by a reputable person" (Ill. Rev. Stat. 1989, ch. 110½, par. 11a—3); that the petition must state the names of the allegedly disabled person's nearest relatives (Ill. Rev. Stat. 1989, ch. 110½, par. 11a—8(e)(2)); and that notice of the proceedings must be given to all adult siblings of the allegedly disabled person (Ill. Rev. Stat. 1989, ch. 110½, par. 11a—10(f)). In addition, section 11a—20(a) of the Act expressly provides that "[u]pon the filing of a petition by or on behalf of a disabled person *** the court may terminate the adjudication of disability of the ward, revoke the letters of guardianship of the estate or person, or both." Ill.. Rev. Stat. 1989, ch. 110½, par. 11a—20(a).

The appellate court in this case ruled that Joseph, as David's sibling, had standing under sections 11a—10(f) and 11a—20(a) of the statute to challenge the order of guardianship. Similarly, the court in *In re Estate of Hayden* (1982), 105 Ill. App. 3d 60, 63, held that under section 11a—20(a), the grandson of the ward "clearly had standing" to petition for revocation of the original order of conservatorship. We agree with those appellate court rulings and hold that Joseph, as David's sibling, had standing under the Act to file his motion to contest

the original disability and guardianship order and to appeal from the denial of that motion.

Additionally, the order in which Joseph's motion to vacate the guardianship order was denied also included a finding of contempt against Joseph and Janet stemming from their failure to return David to Illinois as the court had directed when it granted their petition for a California visitation. Both Joseph and Janet clearly had standing to appeal from the portion of the court's order holding them in contempt.

Joseph's contention in this appeal is that the trial court erred in denying his motion to vacate the order adjudging David disabled and appointing a guardian because the order was void *ab initio* for lack of compliance with the statutorily mandated requirements applicable to a disability adjudication.

Joseph relies upon section 11a—9 of the Act, which states, in part:

> "Report. (a) The petition for adjudication of disability and for appointment of a guardian should be accompanied by a report which contains (1) a description of the nature and type of the respondent's disability; (2) evaluations of the respondent's mental and physical condition and, where appropriate, educational condition, adaptive behavior and social skills, which have been performed within 3 months of the date of the filing of the petition; (3) an opinion as to whether guardianship is needed, the type and scope of the guardianship needed, and the reasons therefor ***.
>
> (b) If for any reason no report accompanies the petition, the court shall order appropriate evaluations to be performed by a qualified person or persons and a report prepared and filed with the court at least 10 days prior to the hearing." Ill. Rev. Stat. 1989, ch. 110$^1$/$_2$, par. 11a—9.

The Act additionally prescribes that, upon the filing of a petition and preliminary to the hearing on the petition, the court appoint a guardian *ad litem* unless the court determines that such appointment is not neces-

sary for the protection of the respondent. Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 11a—10.

Section 11a—11, which governs the hearing, provides that the respondent shall be present at the hearing unless excused by the court upon good cause shown. (Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 11a—11(a).) The court is directed to make inquiries regarding, but not limited to: the nature and extent of the respondent's intellectual functioning; the extent of the impairment of his adaptive behavior; and his understanding and capacity to make and communicate responsible decisions concerning his person. (Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 11a—11(e).) Finally, section 11a—12(b) requires that the court enter a written order stating the factual basis of its adjudication of disability. Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 11a—12(b).

In the case *sub judice*, the petition to adjudicate David a disabled person stated that David had Down's Syndrome, but the petition was not accompanied by a report describing the nature and extent of his physical and mental disability, nor was an evaluation ordered by the court prior to the hearing. David was neither present at the hearing nor represented by a guardian *ad litem* or other counsel. The trial court did not inquire about or rule upon whether there was good cause for David's absence, and the trial court did not make a determination that the appointment of a guardian *ad litem* was unnecessary for David's protection.

The hearing consisted of a colloquy among the trial judge, Hoddick and counsel for Lotte regarding David's living arrangements and his physical and mental capabilities. Counsel described David as childlike in his mannerisms and interests, and stated David's IQ to be 62. Also discussed were Lotte's age and her move to California, and Hoddick's status as "kind of a subguardian" for David. When the absence of a medical report was

noted, the trial judge stated that he would enter the order appointing Hoddick as David's guardian but that counsel should bring in a report "for the record." The clerk of the circuit court of Cook County subsequently certified that no such medical report was found in any court files. The factual basis for the adjudication of disability and appointment of a guardian for David was stated to be that "[h]e has suffered since birth from Down's Syndrome, has a low intelligent [*sic*] quotient, and has low age maturity."

Joseph maintains that the court's reliance on the hearsay statements of Lotte's attorney and Hoddick, the absence of a medical report, as well as the disregard of several other of the Act's requirements violated David's constitutional rights and rendered the disability and guardianship order void. We disagree.

A void order or judgment is one entered by a court without jurisdiction of the subject matter or the parties, or by a court that lacks the inherent power to make or enter the order involved. (*People v. Wade* (1987), 116 Ill. 2d 1, 5; *Barnard v. Michael* (1945), 392 Ill. 130.) A void order may be attacked, either directly or collaterally, at any time. *Wade*, 116 Ill. 2d at 5; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112.

Subject matter jurisdiction is the power of the court to hear and determine the particular matter presented to it. (*Faris v. Faris* (1966), 35 Ill. 2d 305, 309.) Jurisdiction to hear and adjudicate disability and guardianship matters is expressly conferred upon the circuit court by section 11a—3 of the Act. That section states, in pertinent part:

"Adjudication of disability—Power to appoint guardian. (a) Upon the filing of a petition by a reputable person or by the alleged disabled person himself or on its own motion, the court may adjudge a person to be a disabled person and may appoint [a guardian of his person, estate or both]." Ill. Rev. Stat. 1989, ch. 110½, par. 11a—3.

The court acquires jurisdiction over the allegedly disabled person by personal service upon him of a copy of the petition and summons not less than 14 days before the hearing. (Ill. Rev. Stat. 1989, ch. 110$^{1}$/$_{2}$, par. 11a— 10(e); see *McCormick v. Blaine* (1931), 345 Ill. 461.) It is also a jurisdictional requirement that the petitioner give notice of the time and place of the hearing by mail or in person to the nearest living relatives of the allegedly disabled person not less than 14 days before the hearing. Ill. Rev. Stat. 1989, ch. 110$^{1}$/$_{2}$, par. 11a—10(f); see *In re Guardianship of Sodini* (1988), 172 Ill. App. 3d 1055.

In the case at bar, David's mother filed a petition in the probate division of the circuit court seeking an adjudication of his disability, and seeking appointment of a guardian on the ground that David lacked sufficient capacity to make or communicate responsible decisions concerning his person. The matters contained in the petition were unquestionably within the powers of the probate judge to hear and determine. Also, it is undisputed that David was personally served with a copy of the petition and summons more than 14 days before the hearing, and that notice of the petition was timely sent to David's brothers. Thus, the trial court had jurisdiction of the subject matter and of the parties.

Joseph argues, however, that in *People v. Wade* (1987), 116 Ill. 2d 1, this court rejected the principle that a judgment is void only if the court acted without jurisdiction. He asserts that *Wade* and the "unanimity of authority" hold that an order entered without compliance with statutorily prescribed procedures is also void.

In *Wade*, the defendant was charged with robbery and thereafter entered into a plea agreement with the State in which it was stipulated that he had no prior convictions. Pursuant to the agreement, the court

sentenced Wade to 90 days in jail, with time considered served, and to 36 months' probation. Nine months later, a probation officer informed the trial court that Wade had previously been convicted of armed robbery and rape. These convictions made Wade statutorily ineligible for probation under section 5—5—3(c)(2)(F) of the Unified Code of Corrections, which expressly disallows the imposition of a term of probation for a Class 2 or greater felony if the offender has been convicted of a Class 2 or greater felony within the preceding 10 years (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(2)(F)). In the ensuing proceeding, the trial court held that the order granting probation was void due to Wade's ineligibility for probation and resentenced him to a term of imprisonment. This court affirmed, ruling that the trial court exceeded its authority, albeit mistakenly, by ordering a penalty that was proscribed by the legislature, which has the exclusive authority to establish criminal penalties. *Wade*, 116 Ill. 2d at 6-7.

Contrary to Joseph's argument, *Wade* does not represent a departure from previously existing authority. The *Wade* court restated the established principle that an order is void if the court lacked the inherent power to make or enter it. (*Wade*, 116 Ill. 2d at 5; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112; *Barnard v. Michael* (1945), 392 Ill. 130, 135.) The probation order in *Wade* was one expressly prohibited by statute; thus the trial court was without the power to enter it.

Joseph's reliance on *People ex rel. Curtin v. Heizer* (1967), 36 Ill. 2d 438, is also misplaced. The judgment at issue in *Heizer* erroneously included within a fire protection district land located outside the State. This court vacated the judgment, holding that because the land was beyond the jurisdiction of Illinois courts, the trial court had no authority to approve its inclusion in

an Illinois fire protection district. The *Heizer* case is distinguishable from the case at bar.

*City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, is likewise distinguishable. There, the Commission awarded attorney fees to a successful complainant in an employment discrimination proceeding. There was no dispute that the Commission had jurisdiction of the parties and of the subject matter of the complaint. Nevertheless, the court held that the fee award was void because the statute, which was the sole source of the Commission's powers, did not authorize the Commission to award fees and that, in doing so, the Commission exceeded its jurisdiction.

The remaining cases cited by Joseph, *In re Nau* (1991), 209 Ill. App. 3d 805, *rev'd* (1992), 153 Ill. 2d 406, *In re Franklin* (1989), 186 Ill. App. 3d 245, *In re Stone* (1989), 178 Ill. App. 3d 1084, *In re Plank* (1988), 169 Ill. App. 3d 411, *In re Whittenberg* (1986), 143 Ill. App. 3d 836, and *In re Hays* (1983), 115 Ill. App. 3d 686, were direct appeals involving involuntary admission proceedings under the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1989, ch. 91 1/2, par. 1—100 *et seq.*) and are not sufficiently analogous to the case before us to warrant extended comparison and discussion. Moreover, later opinions by this court have held that failure to strictly comply with the statutory procedures of the Code does not necessarily invalidate an ensuing order of involuntary commitment, despite the substantial liberty interests at stake in such a proceeding. See *In re Nau* (1992), 153 Ill. 2d 406 (reversing the appellate court decision cited by Joseph); *In re Robinson* (1992), 151 Ill. 2d 126; *In re Splett* (1991), 143 Ill. 2d 225.

Although we strongly disapprove of the perfunctory manner in which the trial judge conducted the disability and guardianship proceeding in the case at bar and

the court's disregard of several of the statutory procedures which are designed for the protection of persons alleged to be disabled, it has been held that those requirements are procedural, not jurisdictional. See *In re Estate of Mackey* (1980), 85 Ill. App. 3d 235, 237 (statutory procedures governing proceedings for the appointment of a guardian are procedural); *In re Estate of Malloy* (1981), 96 Ill. App. 3d 1020, 1026 (statutory reporting requirements of section 11a—9 are procedural and were not conditions precedent to the court's acquisition of jurisdiction). See also *City of Danville v. Clark* (1976), 63 Ill. 2d 408, 411 (although the court has a duty to appoint a guardian *ad litem* for a minor defendant in a civil case when no parent or guardian appears, a judgment entered without such representation is not void, but only voidable); *In re Estate of Storino* (1977), 51 Ill. App. 3d 49, 52 n.2 (even if the appointment of a guardian *ad litem* for a minor were mandatory under the Probate Act, the court's failure to appoint a guardian would not render the guardianship order void, but merely voidable).

The trial court in this case had personal jurisdiction over the parties and the subject matter. In contrast to *Fair Employment Practices Comm'n,* the Act expressly empowered the trial court to enter a guardianship order, and, unlike *Wade,* the order which the court entered did not exceed what was authorized by statute. Therefore, despite the court's failure to follow various procedures, the guardianship order was a valid order.

We note that Joseph's conduct from the inception of this case has been inconsistent with the position he now takes. Although he was sent notice of the petition for adjudication of disability for David filed by Lotte, he did not appear at the hearing on it or voice opposition to it. Significantly, Joseph has at no time contended that David is not a disabled adult within the meaning of the statute.

To the contrary, more than one year after the adjudication, Joseph and Lotte, and then Joseph and Janet, filed petitions to remove Hoddick as guardian alleging her unfitness to act in that capacity. Both petitions refer to David as a disabled person in need of competent guardianship due to his mental incapacity, and both petitions requested that the petitioners be substituted as successor guardians. The record also discloses that shortly after David's arrival in California in April 1991, Joseph and Lotte filed a petition in the California superior court seeking appointment as David's conservators. The petition was accompanied by psychological evaluations prepared after interviews with David. The evaluations concluded that David was developmentally disabled as a result of Down's Syndrome.

It was only after issuance of the rule to show cause why Joseph and Janet should not be held in contempt that Joseph moved to vacate the original disability and guardianship order as being void. Significantly, the motion itself does not allege that the adjudication of disability was erroneous or that David did not or does not require a guardian. The motion attacks only the procedural deficiencies in the adjudication process. While we recognize that the rights at stake are David's, Joseph has conceded that David is a legally disabled adult in need of a guardian.

We further note that in addition to the evaluations performed in California, the record contains a 1985 psychological evaluation of David and another evaluation performed after the disability hearing. While these reports do not conform to the statutory requirement that a current medical report be filed contemporaneously with the petition or at least 10 days prior to the hearing on it, they also confirm that David has Down's Syndrome and that the condition has rendered him disabled.

Finally, under section 11a—20 of the Act, David or a person acting on his behalf may, at any time, petition to terminate the adjudication of disability, revoke the letters of guardianship or modify the duties of a guardian. This section affords recourse to a person who may have been erroneously adjudged disabled or whose condition or needs have changed since the initial adjudication. David was notified of these rights, and although he did not personally avail himself of them, petitions for modification of the guardianship order were filed on his behalf. Upon the filing of the first petition, the trial judge appointed a guardian *ad litem* for David. The guardian *ad litem* later submitted a lengthy and comprehensive case history report, which included his observation that David was mentally handicapped as a result of Down's Syndrome.

In summary, we reiterate our holding that notwithstanding the procedural deficiencies in the original adjudication process, the order adjudging David disabled and appointing a guardian for him was not void. Moreover, because there is no contention that David is not a disabled adult under the definition of the Act, in light of Joseph's statements and conduct prior to the filing of his motion to vacate, including his petition for modification of the very order he now asserts was void *ab initio*, and since the court implemented measures for David's protection as a result of that petition, we conclude that David has not been deprived of his rights by entry of the original guardianship order.

We express no opinion on the merits of Joseph's petition alleging Hoddick's unfitness to continue as David's guardian. That petition remains pending in the trial court and is not at issue in this court.

We also do not discuss the merits of Hoddick's extensive argument that Joseph's motion to vacate the guardianship order did not comply with the require-

ments of section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401), a vehicle by which to obtain relief from judgments beyond 30 days but within two years of their entry. Joseph did not invoke section 2—1401 or seek section 2—1401 equitable relief. Although Joseph has not prevailed on his claim that the guardianship order was void, because his motion challenged it solely on that basis, Joseph's motion was not restricted by the requirements of section 2—1401. See *In re Estate of Stanford* (1991), 221 Ill. App. 3d 154, 163; *Schlosser v. Schlosser* (1991), 218 Ill. App. 3d 943, 947; *Hoppa v. Schermerhorn* (1989), 192 Ill. App. 3d 832, 835.

The final issue we address is the propriety of the order holding Joseph and Janet in contempt for failing to return David to Illinois as directed in the order granting them permission to take him for a visit in California. The appellate court affirmed the contempt order against Joseph but reversed it as to Janet on the mistaken belief that the trial court never ruled on the motion filed by Janet and Joseph for leave to add Janet as a party-petitioner. The appellate court ordered the cause remanded for further proceedings on the motion to add Janet as a party-petitioner and on Lotte's motion for voluntary dismissal. However, the trial court granted both those motions in an order entered on January 18, 1991; a copy of this order was appended to the brief filed by Hoddick in this court.

Unless an underlying order is void, a court which has jurisdiction over the parties and the subject matter, and which has the power to decide the particular matters presented to it, has the inherent power to enforce its orders by way of contempt. (*In re G.B.* (1981), 88 Ill. 2d 36, 41.) A litigant's disagreement with the court's decision does not excuse the litigant from the obligation to obey it. See *Welch v. City of Evanston* (1989), 181 Ill. App. 3d 49, 54.

Here, we have determined that the original order of disability and guardianship was valid. Subsequent to entry of that order, and prior to his motion to vacate it, Joseph filed his petition to remove Hoddick as guardian for cause. The court thus acquired jurisdiction over Joseph and the subject matter of his petition. Later, Joseph and Janet were granted leave to file an amended petition to add Janet as a petitioner and to appoint her and Joseph co-successor guardians. The court thereby also acquired jurisdiction over Janet.

In the course of proceedings on their petition, Joseph and Janet moved for permission to take David to California for a visit from March 21 through April 16, 1991. The order granting their request was conditioned upon the posting of a bond and contained the express directive that they return David to Illinois no later than April 16, 1991, as they represented in their motion they would do. Joseph and Janet failed to return David on that date, and as of August 22, 1991, the date of the hearing on Joseph's motion to vacate the guardianship order, David was not returned and remained in California with Janet and Joseph.

We note that pursuant to a petition signed by David, the superior court of California entered an injunction on April 17, 1991, prohibiting his removal from that State. The guardian *ad litem* opined that David lacked the mental capacity to independently institute the injunctive action. Counsel for Hoddick agreed, and also argued that the Steinfelds' petition for a temporary visitation in California was merely a ruse to gain permanent physical control of David, and that David's petition and the Steinfelds' subsequent petition for conservatorship of him were calculated actions by the Steinfelds to enlist the California court's assistance in their retention of physical custody of David. The Steinfelds have offered no response to these allegations. However,

irrespective of the California injunction or the Stein-felds' motivations, they were under prior order to return David to this jurisdiction by April 16, 1991. By failing to do so, they subjected themselves to a finding of contempt. Thus, the order of August 22, 1991, holding both Joseph and Janet in contempt was within the trial court's power to enter for the purpose of compelling compliance with a prior order it had validly entered. We hold that the appellate court was in error when it reversed the contempt finding against Janet. The trial court order finding both Janet and Joseph in contempt was correct.

For the reasons stated, the judgment of the appellate court is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

JUSTICE FREEMAN, specially concurring:

Joseph Steinfeld appealed from the trial court's denial of his motion to vacate the order adjudicating his brother, David, a disabled adult and appointing a guardian. The facts which form the basis of his appeal are that the probate division of the circuit court failed to comply with several statutory requirements of the Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110$^{1}$/$_{2}$, par. 11a—1 *et seq.*) prior to the adjudication proceeding. In this appeal, Joseph maintains that the court's failure to comply with these requirements violated David's constitutional rights and rendered the disability and guardianship order void. 158 Ill. 2d at 12.

The majority acknowledges that the petition to adjudicate David disabled was deficient in several ways. Specifically, the majority notes that: (1) the petition was not accompanied by a report describing the nature and extent of David's physical and mental disability; (2) no evaluation was ordered by the court prior to the hearing; (3) David was neither present at the hearing nor

represented by a guardian *ad litem* or other counsel; (4) the trial court did not inquire about or rule upon whether there was good cause for David's absence from the hearing; and (5) the trial court did not make a determination that the appointment of a guardian *ad litem* was unnecessary for David's protection. 158 Ill. 2d at 11.

The majority concludes that the trial court's jurisdiction to enter the order of disability and guardianship was proper and that, therefore, the order was not void. Having so concluded, the majority correctly holds that the order is not subject to collateral attack.

The majority then, however, incorrectly concludes that "because there is no contention that David is not a disabled adult under the definition of the Act, in light of Joseph's statements and conduct prior to the filing of his motion to vacate, including his petition for modification of the very order he now asserts was void *ab initio*, and since the court implemented measures for David's protection as a result of that petition, \*\*\* David has not been deprived of his rights by entry of the original guardianship order." 158 Ill. 2d at 18.

The majority's conclusion with respect to the deprivation of David's rights in the original proceeding cannot be supported by events which occurred subsequent to that proceeding. David was most certainly deprived of his rights by entry of the original order. Regardless of the meritoriousness of the original guardianship petition or the propriety of the court's order in the original proceeding, the fact of the deprivation is not negated. The issue in this case is resolved simply by the majority's recognition that the petitioner's objections to the deficiencies in the original guardianship proceeding are not subject to collateral attack. Nothing more is required. The majority's additional "bootstrap" rationale to address the deficiencies in the original proceeding is both unnecessary and incorrect.