THIRD DIVISION
December 17,

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

| | | |
|---|---|---|
| JAMES T. STRUCK, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 86 P 4029 |
| | ) | |
| COOK COUNTY PUBLIC GUARDIAN, | ) | Honorable |
| | ) | Maureen E. Connors, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, James T. Struck, appeals *pro se* from orders of the circuit court of Cook County appointing the Cook County Public Guardian Robert F. Harris (Public Guardian) as the successor plenary guardian of the person and estate of Janie F. Back Struck, James' mother, and denying James' petition for Janie's restoration. James also appeals from orders of the circuit court restricting or denying him visitation with Janie. For the following reasons, we dismiss James' appeal pertaining to the appointment of the Public Guardian for lack of jurisdiction and we dismiss James' appeals pertaining to visitation for a lack of standing.

In 1986, Janie was adjudicated a disabled adult by the circuit court pursuant to the Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-3(b) (West 2006)). From 1986 until 2006, Janie's

oldest son, Daniel Struck, served as plenary guardian of Janie's estate and person. Janie is 72 years old and has a history of mental illness, including diagnoses of schizophrenia, schizoaffective disorder, and bipolar manic disorder. Janie also suffers from hypertension, hypothyroidism, diabetes, anemia, multiple gastric ulcers and heart problems.

On January 3, 2006, James filed a petition to be appointed guardian of Janie's estate. James' petition asked for reimbursement of expenses for storing furniture, paying for Janie's groceries, transportation and trips to the doctor.

On January 6, 2006, Daniel filed a petition for leave to resign as Janie's guardian and the Public Guardian filed a petition for successor guardianship. In his petition, Daniel stated that he was no longer able to serve as guardian due to work and family obligations. Daniel also suffered a mild to moderate heart attack and was told to avoid stress. Daniel stated that during his guardianship, his mother had lived in the community but difficulties arose and Janie was hospitalized, then placed in a nursing home. After repeated requests, the circuit court allowed Janie to live with James in the community with an expense-sharing arrangement. Daniel stated that the experiment of Janie living with James and sharing expenses was not working well. Daniel stated that since "the experiment at Residential Living of my mother with my brother [James], I have been faced with a series of *pro se* petitions filed by my brother, suggestions from him of his intention to complain about me to one governing body or another, resistance to supervision by my mother, and abundant supplies of stress." The circuit court allowed Daniel's petition to resign conditioned on a final accounting and the appointment of a successor guardian.

Following Daniel's resignation as guardian, Janie was hospitalized, then placed in a

nursing home. On March 5, 2006, James filed a cross-petition for successor guardianship. In his petition, James stated that Janie was a disabled person due to "hypertension and overreaction to past discrimination." On March 22, 2006, James filed a notice of motion asking for Janie to leave the nursing home

On March 27, 2006, Janie's guardian *ad litem* (GAL) filed a motion to dismiss James' cross-petition for successor guardianship. In the motion to dismiss, the GAL stated that James was not qualified to act as Janie's guardian where he could not post a surety bond because he was unwilling to obtain an attorney to represent him. The GAL also stated that James did not acknowledge or accept Janie's mental illness where James' cross-petition stated that Janie's disability was due to "hypertension and overreaction to past discrimination." In support of her motion to dismiss, the GAL attached the report of a psychiatric evaluation of Janie conducted by Dr. Mark A. Amdur on July 3, 2004. James was present during Dr. Amdur's evaluation of Janie, and Dr. Amdur conducted a telephone interview with Daniel. In his report, Dr. Amdur diagnosed Janie with schizoaffective disorder and anosognosia, which is the failure to appreciate one's own illness. Consistent with anosognosia, Janie saw no need for antipsychotic medications and was currently refusing to take her medications. In addition, Janie minimized the nature and severity of her symptoms. Janie demonstrated bursts of anger and Daniel reported that Janie has been physically and verbally assaultive. Dr. Amdur reported that James did not think that Janie needed to take antipsychotic medications. Dr. Amdur concluded that long-acting injectable antipsychotic medication was the only way to provide reliable medication to Janie and recommended continued placement at a nursing home facility to ensure Janie received her medication. Dr. Amdur

concluded that, in his opinion, without the benefit of antipsychotic medication, if Janie were returned to the community, within a few months she would relapse to a condition where she would be unable to care for herself and would pose a potential danger to others.

On April 3, 2006, James filed a reply to the GAL's motion to dismiss his cross-petition for successor guardianship. In his reply, James disputed Dr. Amdur's diagnosis of schizoaffective disorder and stated that Janie suffered from posttraumatic stress and an "overreaction to discrimination." Also on April 6, 2006, James filed a petition for "the termination or modification of adjudication of disability" on Janie's behalf. In that petition, James stated that Janie was able to care for herself and that "several doctors" indicated that Janie would be better off living in a "less restrictive environment outside of a nursing home."

On May 3, 2006, the circuit court conducted a hearing on the Public Guardian's petition for successor guardianship and the GAL's motion to dismiss James' cross-petition for successor guardianship. In support of her motion to dismiss, the GAL argued that James refused to acknowledge Janie's diagnosed mental condition and James, therefore, would be unable to provide a care plan for Janie. The GAL also noted that in the previous year James took Janie out of the nursing home and lived with Janie, then Janie had to return to the facility. James was represented by an attorney at the hearing. James' attorney argued that James accepted that Janie suffered from manic depression or posttraumatic stress and James agreed to take Janie to a mental health center for treatment and medication. James' attorney explained that when James lived with Janie, problems occurred because Daniel, Janie's guardian at the time, did not pay funds in the manner Janie requested. James' attorney argued that James could live with Janie and that Janie

was capable of caring for herself.

Following the parties' arguments, the circuit court indicated that in the past James persuaded the court to allow Janie to live with him. The court stated that as a result of Janie living in the community with James, Janie was involuntarily committed. The circuit court concluded that James' past behavior and behavior during the hearing did not demonstrate an "ability to provide a suitable role of guardian." The circuit court granted the GAL's motion to dismiss James' cross-petition for successor guardian and appointed the Public Guardian as successor plenary guardian of Janie's estate and person.

On September 13, 2006, the circuit court conducted a hearing on James' petition for restoration or modification of the adjudication of disability. The circuit court found that James failed to provide clear and convincing evidence in support of the petition. Based on testimony during the hearing regarding Janie's worsening condition, her belligerence, and the court's observation of Janie's delusional behavior during the hearing, the court denied the petition for restoration or modification of the adjudication of disability.

On September 21, 2006, James filed a document stating that he would discuss "petitions for reimbursement" and "clarify issues [at the] modification hearing." On October 20, 2006, James filed a notice of appeal from the circuit court's orders of May 3, 2006, and September 13, 2006. In his notice of appeal, James also requested that this court award him $6,600 for expenses he spent on caring for Janie.

On June 26, 2007, the Public Guardian filed a motion to dismiss James' appeal for lack of jurisdiction because James' notice of appeal was not filed within 30 days of either order, as

required by Supreme Court Rule 303 (210 Ill. 2d R. 303). On July 9, 2007, this court granted the Public Guardian's motion and dismissed James' appeal (No. 1-06-2996 (July 9, 2007) (unpublished order pursuant to Supreme Court Rule 23)).

On May 14, 2007, the circuit court conducted a hearing on James' motion for visitation with Janie. The Public Guardian informed the court that visitation between James and Janie had been suspended for the previous week and asked to suspend visitation for two more weeks. The Public Guardian informed the court that Janie was currently in a nursing home and had been there for a week. The nursing home administrator reported that Janie was socializing with other residents and was not asking to leave the nursing home. The Public Guardian stated that James had a history of agitating his mother and interfering with the Public Guardian's care plan for Janie. The Public Guardian reminded the court that in 2006, James purchased and administered medications to Janie while Janie received medication at the nursing home. The Public Guardian explained that prior to her current placement in the nursing home, Janie was hospitalized on April 25, 2006, for two days and was then transferred to the psychiatric unit at the hospital. At that time Janie was living with James and they were in the process of being evicted from their apartment. The Public Guardian reported that James directed Janie not to cooperate with a blood draw while Janie was at the hospital. After Janie was transferred to the psychiatric unit, James told a social worker that he had a power of attorney to direct Janie's medical care. The Public Guardian stated that during James' last visit to the nursing home, he became disruptive and had to be escorted out of the building. The Public Guardian also reported that James made verbal threats to his office.

Janie's GAL reported that when Janie was living with James in an apartment, Janie sometimes would not let James into the apartment and James would sleep somewhere else in the apartment building. The GAL agreed with the two-week suspension of visitation and that once visitation resumed, it be supervised. The attorney for Daniel, Janie's former guardian, indicated that the circuit court and everyone else has been patient with James, but his actions have been harmful to Janie. Daniel's attorney stated that James has interfered with Janie's medication and ignored the benefits of medication. Daniel's attorney indicated that Janie was doing well at the previous nursing home and the experiment of James and Janie living together was a failure. James denied interfering with any blood tests and indicated that the incident at the hospital was politically motivated. James also denied threatening the Public Guardian.

Following the hearing, the circuit court ordered that the "Public Guardian is authorized to continue its restriction of visitation between [James] and Janie Struck until further order of court" and "[t]he court will review the restriction of visitation on May 30, 2007." On May 30, 2007, James filed a notice of appeal from the circuit court's May 14, 2007 order (No. 1-07-1865).

On June 7, 2007, the circuit court entered an order that precluded James from filing any documents prior to the next scheduled court date of June 19, 2007. The circuit court's order also granted Daniel's request for a restraining order against James.

On June 20, 2007, James filed a motion for visitation with Janie. On June 25, 2007, the circuit court conducted a hearing on James' motion for visitation. The Public Guardian asked to continue the restriction on James' visitation at that time. The Public Guardian reported that while in the nursing home, Janie was accepting her shots, socializing with peers and doing well. The

Public Guardian stated that James continually calls the Public Guardian's office and states that his mother wants to come home. During his argument, James stated that "this is an area that Cook County benefits financially from *** missile sales" and that is why his mother is given shots. James argued that his visitation rights were restricted because Cook County profits from individuals' deaths. James stated that Janie wrote him a letter asking him to visit and that she would be harmed if his visitation were limited.

In denying James' motion for visitation, the circuit court noted that James' argument was "tangential, repetitive, and sometimes, nonsensical." The court stated, "There has been adequate proof here on prior occasions that you have caused substantial harm to your mother while she was in your care. Visitation again will be denied. We keep hearing the same argument." In its order, the circuit court made a finding that the order was final and appealable. On July 12, 2007, James filed a notice of appeal from the circuit court's June 25, 2007, order (No. 1-07-1916).

On January 4, 2008, this court denied the Public Guardian's motion to strike James' brief and dismiss his appeal (No. 1-07-1916). James' appellate brief contains nonsensical arguments pertaining to the risks of secondhand smoke and pneumonia in nursing home facilities, alleged that Cook County profits from taxing corporations involved in the sale of alcohol, tobacco, and weapons, and equated guardianship to slavery. Based on the deficiencies of James' brief, this court directed the Public Guardian to file a consolidated brief addressing the following issues: (1) whether James Struck has standing before the circuit court and before this court; (2) whether the circuit court's order appointing a guardian for Janie B. Struck should be affirmed; (3) what the limitations are that have been placed upon the contact between Janie and James, and whether

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

these limitations are appropriate; and (4) whether the circuit court's order regarding James'

request for reimbursement for purported expenditures should be affirmed. This court also

ordered that case numbers 1-07-1865 and 1-07-1916 be consolidated. We find that the Public

Guardian's brief and the record in this case are sufficient to allow us to evaluate James' appeal.

See Chicagoland Chamber of Commerce v. Pappas, 378 Ill. App. 3d 334, 347 (2007) (appeal not

dismissed despite appellants' multiple failures to comply with supreme court rules in their briefs,

where issues were of public interest and the record was sufficient to permit review).

While James' consolidated appeals were pending, on August 21, 2007, the circuit court

entered an agreed order for supervised visitation between James and Janie. The agreed order

required that James not speak to Janie about her treatment plan or medication if it causes her

distress. The order also barred James from speaking to Janie about leaving the nursing home.

The agreed order provided that if James became disruptive or failed to comply with the visitation

protocol, the Public Guardian retained the authority to restrict visitation. The agreed order

further provided that James was required to leaving the nursing home if the Public Guardian case

manager or nursing home staff terminated a visit.

On January 11, 2008, the Public Guardian filed a report to the circuit court and petition

for court direction related to visitation. On January 18, 2008, the circuit court conducted a

hearing on the Public Guardian's petition. The Public Guardian reported that James repeatedly

violated the agreed visitation order. Although the visits were to be supervised, James repeatedly

appeared at the nursing home for a visit when none was scheduled. During supervised visits,

James twice demanded that Janie write letters stating that she wanted to leave the nursing home,

-9-

even when she said that she did not want to. The nursing home administrator informed the Public Guardian that James was so disruptive that he did not want James back in the building. The nursing home administrator indicated that if James continued to visit, Janie would have to leave the nursing home. The Public Guardian stated that since James was jeopardizing the best placement that Janie had had in a year and a half, the Public Guardian had no choice but to suspend visitation. The Public Guardian proposed suspending visitation for six months, then revisiting the issue on July 18, 2008.

Daniel's attorney stated that he had been involved with the case for 22 years and agreed with the Public Guardian's request regarding visitation. The GAL indicated that she also agreed with the Public Guardian's request regarding visitation. The GAL reported that Janie only asks to leave the nursing home after a visit from James. The GAL stated that "Jane's need for a safe placement trumps [James'] visitation rights. ***. If he could conform his behavior, those two rights wouldn't have to be head to head. But they are."

Following the hearing, the circuit court vacated the agreed visitation order and prohibited James from visiting Janie until July 18, 2008. In denying visitation, the circuit court found that James had been very disruptive to nursing home staff, that he had failed to follow the conditions of the agreed visitation order, and that there was no therapeutic value to visitation between James and Janie. In its order, the circuit court also precluded James from filing any requests for visitation, phone contact, return home or restoration relating to Janie until July 18, 2008.[1]

---

[1] While James does not raise the propriety of the circuit court's order prohibiting him from repeatedly filing such requests between court dates, we note that it is well established that trial

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

On March 14, 2008, after the circuit court denied James' motion to reconsider, James filed a notice of appeal from the circuit court's January 18, 2008, order (No. 1-08-0700). On April 24, 2008, this court allowed the Public Guardian's motion to consolidate appeal No. 1-08-0700 with appeal Nos. 1-07-1865, 1-07-1916.

On appeal, the Public Guardian, citing In re Estate of Steinfeld, 158 Ill. 2d 1 (1994) and In re Estate of Hayden, 105 Ill. App. 3d 60 (1982), concedes that James has "limited standing" to appeal the denial of his cross-petition for successor guardianship, the appointment of the Public Guardian as successor guardian, and the denial of James' petition for restoration or modification of the adjudication of disability.

Pursuant to Article 11a of the Probate Act, guardianships are utilized "to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence." 755 ILCS 5/11a-3(b) (West 2006). In furtherance of these goals, where, as here, a plenary guardian of the person has been appointed, that guardian must make decisions on behalf of the ward that conform " 'as closely as possible to what the ward, if competent, would have done or intended under the circumstances.' " In re Mark W., 228 Ill. 2d 365, 374 (2008), quoting 755 ILCS 5/11a-17(e) (West 2000). If the preferences of the ward are unknown and remain unknown after reasonable

courts have the inherent authority to control their docket and the course of litigation, including the authority to prevent undue delays in the disposition of cases caused by abuses of the litigation process. See J.S.A. v. M.H., 224 Ill. 2d 182, 196 (2007); Redelmann v. K.A. Steel Chemicals, Inc., 377 Ill. App. 3d 971, 976 (2007).

-11-

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

efforts to discern them, decisions shall be made on the basis of the ward's best interest as determined by the guardian. In re Estate of K.E.J., 382 Ill. App. 3d 401, 417-18 (2008), citing 755 ILCS 5/11a-17(e) (West 2006). In making such decisions that affect the ward, the guardian is to consider only the ward's best interest, and not the interests of the ward's family, of society, or of the guardian himself. See, e.g., K.E.J., 382 Ill. App. 3d at 415.

With respect to James' standing to challenge the order of guardianship and denial of restoration or modification, Article 11a of the Probate Act states that the circuit court may adjudge an individual a disabled person "[u]pon the filing of a petition by a reputable person" (755 ILCS 5/11a-3(a) (West 2006)); that the petition must state the names and post office addresses of the allegedly disabled person's nearest relatives, including adult children (755 ILCS 5/11a-8(e) (West 2006)); and that notice of the proceedings must be given to those persons named in the petition (755 ILCS 5/11a-10(f) (West 2006)). In addition, section 11a-20 of the Probate Act expressly provides that "[u]pon the filing of a petition by or on behalf of a disabled person or on its own motion, the court may terminate the adjudication of disability of the ward, revoke the letters of guardianship of the estate or person, or both." 755 ILCS 5/11a-20(a) (West 2006). Section 11a-20 also explains that such a request for termination of the adjudication of disability, revocation of letters, or modification may be made "by the ward or any other person on the ward's behalf." 755 ILCS 5/11a-20(b) (West 2006).

Accordingly, under sections 11a-10 and 11a-20 of the Probate Act, James had standing to challenge the order of guardianship and to petition the circuit court to terminate the adjudication of Janie's disability, to revoke the letters of guardianship, or to modify the duties of the guardian.

-12-

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

See In re Estate of Steinfeld, 158 Ill. 2d 1, 9-10 (1994) (brother of individual adjudicated as a disabled adult had standing under sections 11a-10 and 11a-20 of the Probate Act to file a motion to contest the original disability and guardianship order and to appeal from denial of that motion); see also In re Estate of Hayden, 105 Ill. App. 3d 60, 63 (1982) (grandson of a ward had standing under section 11a-20 of the Probate Act to petition for the revocation of the original order of conservatorship).

While James clearly had standing to challenge the original order of guardianship and to petition for Janie's restoration and the revocation or modification of the duties of the guardian, we find that this court lacks jurisdiction to consider James' appeal from these orders. The record shows that the circuit court entered an order on May 3, 2006, appointing the Public Guardian as successor plenary guardian and denying James' cross-petition for successor guardianship. On September 13, 2006, the circuit court entered an order denying the petition for restoration or modification of the adjudication of disability. These orders pertaining to guardianship were immediately appealable pursuant to Supreme Court Rule 304(b)(1) (210 Ill. 2d R. 304(b)(1)). However, under Supreme Court Rule 303(a), a party must file an appeal within 30 days after entry of the final judgment appealed from or within 30 days after the entry of an order disposing of a timely postjudgment motion directed against the judgment. 210 Ill. 2d R. 303(a). Supreme Court Rule 303(d) allows this court to grant a party's motion to amend its notice of appeal if, within 30 days after the notice of appeal was due, the party files a "motion supported by a showing of reasonable excuse for failure to file a notice of appeal on time." 210 Ill. 2d R. 303(d). Here, James filed his notice of appeal on October 20, 2006, more than 30 days after the

entry of the circuit court's orders. James did not seek an extension of the 30-day time limit under Supreme Court Rule 303(d) (210 Ill. 2d R. 303(d)). James' appeal from the court's orders of May 3, 2006, and September 13, 2006, was therefore untimely, and we must dismiss it.

We next consider James' appeal from the circuit court's orders pertaining to visitation. While the Public Guardian takes the position that James has standing to appeal orders denying or restricting visitation with his mother, we find no authority in the Probate Act providing James with standing to assert a right to visit with Janie and to challenge the guardian's decisions on this point.

As previously discussed, Article 11a of the Probate Act provided James with a means to challenge the original guardianship order and to seek revocation or modification of that order. However, Article 11a does not contain any provision providing that relatives can request visitation with the ward or challenge the guardian's individual decisions regarding visitation or other matters concerning the ward. 755 ILCS 5/11a-1 through 11a-22 (West 2006). Accordingly, James lacked standing to assert a right to visit with his mother and to challenge the guardian's decisions regarding visitation.

In addition, this court has previously determined that an individual who is not the ward's guardian does not have standing to appeal a decision of the circuit court on behalf of the ward. See In re Guardianship of Austin, 245 Ill. App. 3d 1042, 1047 (1993) (where the office of the State Guardian was not the guardian for certain wards, it did not have standing to appeal circuit court orders on behalf of those wards). Therefore, to the extent that James is attempting to appeal the circuit court's orders regarding visitation on Janie's behalf, he does not have standing

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

to do so.

To the extent that James argues that the guardian's decisions are causing harm to Janie, we note that the circuit court has a duty to protect a ward from such alleged harm. In In re Mark W., 228 Ill. 2d 365, 374-75 (2008), our supreme court explained that an individual who has been adjudicated disabled under the Probate Act is viewed as " 'a favored person in the eyes of the law' " and is entitled to vigilant protection. Mark W., 228 Ill. 2d at 374-75, quoting In re Estate of Wellman, 174 Ill. 2d 335, 348 (1996). Our supreme court stated that once a person is adjudicated disabled, that person remains under the jurisdiction of the court, even when a plenary guardian of the person has been appointed. Mark W., 228 Ill. App. 3d at 375. The court therefore has "a duty to judicially interfere and protect the ward if the guardian is about to do anything that would cause harm." Mark W., 228 Ill. App. 3d at 375. To fulfill this duty, the court's authority is not limited to express statutory terms. Mark W., 228 Ill. App. 3d at 375, citing In re Estate of Nelson, 250 Ill. App. 3d 282, 287-88 (1993) (recognizing the authority of the circuit court to appoint a guardian *ad litem* to investigate an allegation that a ward was neglected). Our supreme court concluded that, in accordance with these principles, a circuit court has the authority to appoint a guardian *ad litem* to protect the interests of a disabled individual even though that individual already had a plenary guardian of the person. Mark W., 228 Ill. 2d at 375.

Pursuant to Mark W., the circuit court here had a duty to judicially intervene if the guardian was about to do anything that would cause harm to Jamie. While an individual, such as James in this case, may alert the circuit court to potential harm and ask the court to intervene, this

-15-

does not confer standing on that individual to challenge the guardian's decisions. Rather, it is the circuit court that retains jurisdiction over the ward and is charged with the duty to intervene and protect the ward from harm stemming from the guardian's decisions. Mark W., 228 Ill. 2d at 375. Indeed, as previously discussed, if an individual seeks to challenge the decisions of the guardian, the Probate Act provides standing for the limited purpose of challenging the order of guardianship (755 ILCS 5/11a-8(e), 10(f) (West 2006)) or to petition the circuit court to terminate the adjudication of disability, revoke the letters of guardianship, or modify the duties of the guardian (755 ILCS 5/11a-20 (West 2006)). Upon the filing of a petition under section 11a-20 of the Probate Act, the circuit court may terminate the guardianship or modify the guardian's duties based on "clear and convincing evidence" of the ward's capacity to perform the tasks necessary for the care of her person or the management of her estate. 755 ILCS 5/11a-20(a) (West 2006). As previously explained, James failed to timely appeal the circuit court's orders regarding guardianship.

James also asserts a constitutionally protected right to a relationship with his mother as a basis to request visitation with Janie and to challenge the guardian's visitation decisions. The United States Courts of Appeal across the country are split over whether there is a constitutionally protected right to a relationship between a parent and an adult child. Robertson v. Hecksel, 420 F.3d 1254, 1259 (11th Cir. 2005) (finding no interest); Russ v. Watts, 414 F.3d 783, 790 (7th Cir. 2005) (overruling its prior position and finding no interest); McCurdy v. Dodd, 352 F.3d 820, 830 (3d Cir. 2003) (finding no interest); Butera v. District of Columbia, 235 F.3d 637, 656 (D.C. Cir. 2001) (finding no interest); Smith v. City of Fontana, 818 F.2d 1411, 1418

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

(9th Cir. 1987) (finding an interest); <u>Valdivieso Ortiz v. Burgos</u>, 807 F.2d 6, 10 (1st Cir. 1986) (finding no interest); <u>Trujillo v. Board of County Commissioners</u>, 768 F.2d 1186, 1189 (10th Cir. 1985) (recognizing an interest where there has been a direct effort to interfere with the relationship).

The United States Supreme Court has yet to address the issue. However, "[t]he Supreme Court has 'always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.' " <u>Russ</u>, 414 F.3d at 789, quoting <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720, 138 L. Ed. 2d 772, 787, 117 S. Ct. 2258, 2267 (1997). The Supreme Court has cautioned that courts must " 'exercise the utmost care' in extending constitutional protection to an asserted right or liberty interest because, in doing so, we 'place the matter outside the arena of public debate and legislative action.' " <u>Russ</u>, 414 F.3d at 789, quoting <u>Glucksberg</u>, 521 U.S. at 720, 138 L. Ed. 2d at 787, 117 S. Ct. at 2267-68. Consistent with these principles, the majority of courts that have considered this issue, and all of the more recent cases, decline to find a protected interest. See, e.g., <u>Russ</u>, 414 F.3d at 790 (Seventh Circuit criticized its prior holding in <u>Bell v. City of Milwaukee</u>, 746 F.2d 1205 (7th Cir. 1984) and overruled it to find no protected interest). Accordingly, we decline to find a substantive due process right to a relationship between an adult child and a parent to provide James standing to request visitation with Janie and to challenge the guardian's visitation decisions.

For the above reasons, we dismiss James' appeal pertaining to the appointment of the Public Guardian for lack of jurisdiction and we dismiss James' appeals pertaining to visitation for

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

a lack of standing.

       Appeal dismissed.

       COLEMAN, J., concurs.

       THEIS, J., specially concurring.

JUSTICE THEIS, specially concurring:

       I agree with the majority's conclusion that James lacks standing to challenge the visitation

orders. However, I write separately to point out that this court also lacks jurisdiction over those

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

orders.

As the majority explained, James filed notices of appeal from three orders entered by the circuit court. First, he filed a notice of appeal from the circuit court's May 14, 2007, order authorizing the Public Guardian to restrict his visitation with Janie. That order specifically provided that the circuit court would review the restriction on visitation on a later date. That order is the basis of appeal number 1-07-1865. Second, James filed a notice of appeal from the circuit court's June 25, 2007, order denying him visitation with Janie "at this time." The circuit court specifically found the order immediately final and appealable. That order is the basis of appeal number 1-07-1916. Roughly one month later, on August 21, 2007, the circuit court entered an agreed order permitting James to have supervised visits with Janie. The third and final order from which James filed a notice of appeal was the circuit court's January 18, 2008, order suspending visitation. The order indicated that the circuit court would revisit the issue six months later. That order is the basis of appeal number 1-08-0700. Each of these three orders from which James seeks to appeal indicates that the court would, and as the record shows did, revisit the issue of visitation at a later date.

Generally, appellate jurisdiction exists only to review final orders. Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd., 182 Ill. 2d 6, 7, 694 N.E.2d 562, 563 (1998); Weiss v. Waterhouse Securities, Inc., 335 Ill. App. 3d 875, 880, 781 N.E.2d 1105, 1109 (2002). An order is said to be final if it " ' "disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof," ' " such as a claim in a civil case. In re Estate of French, 166 Ill. 2d 95, 101, 651 N.E.2d 1125, 1128 (1995), quoting Treece v. Shawnee

20

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

*Community Unit School District No. 84*, 39 Ill. 2d 136, 139, 233 N.E.2d 549, 551 (1968), quoting *Village of Niles v. Szczesny*, 13 Ill. 2d 45, 48, 147 N.E.2d 371, 372 (1958). The mere fact that an order resolves important issues does not render it final. *In re Curtis B.*, 203 Ill. 2d 53, 59, 784 N.E.2d 219, 223 (2002). An order is final for purposes of appeal if it terminates the litigation between the parties so that, if affirmed, the trial court only has to proceed with the execution of the judgment. *In re Guardianship of J.D.*, 376 Ill. App. 3d 673, 676, 878 N.E.2d 141, 143 (2007). Thus, a final order finally determines, fixes, and disposes of the issues in the case as a matter of law. *J.D.*, 376 Ill. App. 3d at 676, 878 N.E.2d at 143.

It is axiomatic that where a matter remains pending, it cannot be said to be final and appealable. See, *e.g.*, *Cannon v. William Chevrolet/Geo, Inc.*, 341 Ill. App. 3d 674, 680, 794 N.E.2d 843, 848 (2003) (matter not final where a claim remained pending). For example, in *In re Guardianship of J.D.*, 376 Ill. App. 3d at 677, 878 N.E.2d at 144, this court held that a temporary order entered in a guardianship proceeding was not a final appealable order. The court explained that because the order was only temporary and would be reviewed and reevaluated by the circuit court at a later date, there was no question that it did not " 'finally determine, fix and dispose of the parties' rights.' " *J.D.*, 376 Ill. App. 3d at 677, 878 N.E.2d at 144, quoting *Lubben v. Lubben*, 135 Ill. App. 3d 302, 305, 481 N.E.2d 856, 858 (1985). Therefore, the temporary order removing the guardian was not final for purposes of appeal. *J.D.*, 376 Ill. App. 3d at 677, 878 N.E.2d at 144; see also *Curtis B.*, 203 Ill. 2d at 59-60, 784 N.E.2d at 223 (explaining that a permanency planning goal established in a child abuse and neglect proceeding under the Juvenile Court Act of 1987 cannot be said to be final because it will be reevaluated by the circuit court

21

every six months).

Here, as in J.D., the orders regarding visitation were only temporary. Each of the orders specified that it would be reviewed at a later time. Therefore, the visitation orders were not final and appealable. See J.D., 376 Ill. App. 3d at 677, 878 N.E.2d at 144.

I must further note that the circuit court's finding that the order was "final and appealable" was insufficient to confer appellate jurisdiction under Supreme Court Rule 304(a) (210 ILL. 2d R. 304(a)). As this court also explained in J.D., the inclusion of a Rule 304(a) finding in an order does not transform a nonfinal order into a final and appealable one. J.D., 376 Ill. App. 3d at 677, 878 N.E.2d at 144-45. Rule 304(a) language is only applicable to cases involving multiple claims and/or multiple parties, and in those cases, it can be used to sever a final claim as to one party from other non-final claims and/or other parties. 210 Ill. 2d R. 304(a); F.H. Prince & Co. v. Towers Financial Corp., 266 Ill. App. 3d 977, 982-83, 640 N.E.2d 1313, 1316-17 (1994). Rule 304(a) does not affect finality. See F.H. Prince, 266 Ill. App. 3d at 982, 640 N.E.2d at 1316.

The present case does not involve multiple claims or parties, and, as explained above, the visitation orders were not final. Therefore, the Rule 304(a) finding is completely superfluous. See J.D., 376 Ill. App. 3d at 677, 878 N.E.2d at 144-45.

In summary, we lack jurisdiction to entertain James' appeal from the visitation orders, and this appeal should be dismissed. Accordingly, I specially concur with the majority's judgment.

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)

1-07-1865, 1-07-1916 and 1-08-0700 (Consolidated)