NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 221061-U

NO. 4-22-1061

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF JAMES CARPENTER, A Disabled Adult | ) ) | Appeal from the Circuit Court of |
| (Christine Carpenter, | ) | Ogle County |
| Petitioner-Appellant, | ) | No. 19P35 |
| v. | ) | |
| The Office of the State Guardian, | ) | Honorable |
| Respondent-Appellee). | ) | John Benjamin Roe IV, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court dismissed the appeal on the Office of the State Guardian's motion, concluding it had jurisdiction to review the trial court's final order on the petitioner's request to change the ward's placement but petitioner lacked standing to challenge the court's placement decision on appeal.

¶ 2    Petitioner, Christine Carpenter, the adoptive mother of James Carpenter, a disabled adult, appeals from the Ogle County circuit court's November 14, 2022, order regarding James's placement at the Avancer Santa Fe (Avancer) community-integrated living arrangement (CILA). In its order, the court denied petitioner's request to change James's placement and concluded the current placement at Avancer was appropriate under the current circumstances. On appeal, petitioner argues the court's finding the placement was appropriate was against the manifest weight of the evidence and was not in James's best interests. Petitioner further asserts

respondent, the Office of the State Guardian (OSG), has failed to comply with a DuPage County circuit court order as well as the Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-1 to 11a-25 (West 2022)). OSG has filed a motion to dismiss the appeal on the grounds this court lacks jurisdiction to review the court's November 14, 2022, order and petitioner nonetheless lacks standing to challenge James's placement. Alternatively, OSG argues the court's order did not constitute an abuse of discretion and this court should affirm the judgment.

¶ 3        On appeal, we conclude this court has jurisdiction to review the trial court's November 2022 order. However, because we find petitioner lacks standing to pursue this appeal, OSG's motion is granted, and the appeal is dismissed.

¶ 4                                I. BACKGROUND

¶ 5                        A. Du Page County Circuit Court Proceedings

¶ 6        In May 2009, petitioner was appointed James's guardian under section 11a-3 of the Probate Act (*id.* § 11a-3) in Du Page County. In March 2013, James suffered cardiac arrest and organ failure and was admitted to RML Specialty Hospital (RML). Shortly thereafter, a representative from RML contacted the Du Page County circuit court to report concerns with petitioner's ability to act in James's best interests as his guardian. Specifically, RML had received a report from a City of Naperville detective that petitioner was accused of overdosing James with Tylenol, which allegedly caused his respiratory and liver failure, as well as anoxic brain injury. Later in March 2013, petitioner's letters of office were suspended, and OSG was appointed as James's temporary guardian. In March 2014, James's court-appointed guardian *ad litem* (GAL) filed a petition to permanently discharge petitioner as guardian. In October 2014, petitioner resigned as guardian, and OSG was appointed as successor plenary guardian.

¶ 7    Following OSG's appointment, petitioner filed a motion for a temporary restraining order (TRO) to prevent OSG from placing James at Avancer. After an October 7, 2014, hearing on placement, the trial court denied petitioner's motion for a TRO and allowed James's placement at Avancer.

¶ 8    In May 2015, petitioner filed a petition for relief, again challenging James's placement at Avancer. In July 2015, OSG filed a second supplemental report regarding James's placement. In August 2015, the trial court appointed a GAL to review OSG's reports and the issues petitioner raised in her May 2015 petition. In October 2015, the GAL filed a report responding to OSG's report and petitioner's concerns. Following a hearing over two days in February and March 2016, the trial court entered an order denying petitioner's requests for relief.

¶ 9    In November 2018, petitioner filed a petition requesting the trial court to order OSG to prepare a report regarding its efforts to seek placement for James closer to her residence in Westmont, Illinois, and to explain its restrictions regarding her visits with James. In December 2018, OSG filed a report on placement. In the report, OSG stated James's current placement was meeting his needs and Access Services of Northern Illinois continued to search for appropriate placement nearer to petitioner on OSG's behalf. OSG explained this had proven difficult because James required wheelchair accessibility. In January 2019, the court entered a written order requiring OSG to prepare a report as to why CILA placement was the most appropriate placement for James as opposed to 24-hour skilled nursing care.

¶ 10    In March 2019, OSG filed its third amended supplemental report, asserting skilled nursing care was an inappropriate setting for James. Specifically, OSG clarified PACT Inc. (PACT), was an agency contracted with the Illinois Department of Human Services (IDHS) to act as an independent service coordinator (ISC). As an ISC, PACT was tasked with assessing

James's placement needs, to which OSG could consent. Under IDHS guidelines, which required James be placed in the least restrictive placement, PACT determined a CILA placement was most appropriate for James. Because of this determination, funding for placement at a skilled nursing facility—a more "restrictive" placement—would have been denied had James been referred to one. Additionally, OSG opined that James was doing well in his current placement, and because James struggled with transitions, moving him was not in his best interests.

¶ 11                              B. Ogle County Circuit Court Proceedings

¶ 12        In May 2019, this case was transferred to the Ogle County circuit court because James resided there. In September 2020, OSG submitted a report on its placement search, which included a table indicating all the referrals it had sought with responses from each potential CILA placement. None of the potential CILAs indicated they could meet James's needs at the time they were contacted. In April 2021, OSG sent a referral packet to petitioner. In the referral packet, OSG attached a table listing potential CILAs it had contacted, including the provider name, location, date contacted, name of contact, response (yes or no), and reason/comments. All eight of the CILAs contacted on April 13, 2021, responded negatively.

¶ 13        Between June 2020 and March 2022, petitioner *pro se* filed 16 pleadings requesting various forms of relief and responding to reports filed by OSG and the GAL. Specifically, petitioner filed motions and petitions to (1) revise the referral packets, (2) direct OSG to send referral packets to certain potential placements, (3) relocate James to skilled nursing care closer to her residence, and (4) restore guardianship to her.

¶ 14        On October 6, 2021, OSG filed a motion to dismiss petitioner's pleadings. On January 6, 2022, the trial court granted OSG's motion to dismiss except as to the issues of restoring petitioner as guardian and James's placement. The court further ordered that petitioner

- 4 -

must seek leave of court before filing any additional pleadings. At an April 2022 hearing, the court denied petitioner's petition to be restored as guardian. Afterwards, the only remaining issue was the appropriateness of James's placement.

¶ 15        Over four dates between April and October 2022, the trial court conducted an evidentiary hearing on the issue of placement. On November 14, 2022, the court entered a written order stating the following:

> "1. Petitioner's motion to change the ward's placement is denied.
>
> 2. The placement is appropriate given the current circumstances.
>
> 3. Petitioner, Christine Carpenter, shall not file further pleadings without leave of [c]ourt.
>
> 4. The matter is set for current report 12/14/2022 at 9 a.m."

¶ 16        On December 5, 2022, petitioner filed a notice of appeal challenging the trial court's November 14, 2022, order. In February 2023, OSG filed a motion to dismiss the appeal on the grounds this court lacks jurisdiction and petitioner lacks standing. This court took OSG's motion with the case. In May 2023, petitioner filed a motion to supplement the record, which this court denied. In June 2023, petitioner filed a motion to reconsider the denial of her motion to supplement the record, which this court took with the case.

¶ 17                              II. ANALYSIS

¶ 18        On appeal, petitioner argues the trial court's finding the placement was appropriate was against the manifest weight of the evidence and was not in James's best interests. Petitioner also argues OSG has failed to comply with various court orders and the Probate Act. OSG responds this appeal should be dismissed because this court lacks jurisdiction to review the trial court's November 14, 2022, order and petitioner lacks standing to challenge

James's placement. Alternatively, OSG argues the court's order did not constitute an abuse of discretion and this court should affirm the judgment.

¶ 19        We conclude this court has jurisdiction to review the trial court's November 14, 2022, order. However, we find petitioner lacks standing to appeal. Accordingly, petitioner's motion to reconsider the denial of her motion to supplement the record is denied, OSG's motion is allowed, and the appeal is dismissed.

¶ 20                        A. Jurisdiction

¶ 21        In her brief, petitioner asserts this court has jurisdiction of this appeal under Illinois Supreme Court Rules 301 and 304. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 304 (eff. Mar. 8, 2016). OSG responds this court lacks jurisdiction because the trial court's November 14, 2022, order was not a final judgment under Rule 301 and it did not "finally" determine the rights or status of any party under Rule 304(b)(1). See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 304(b)(1) (eff. Mar. 8, 2016).

¶ 22        Generally, if the trial court enters a final order that does not dispose of an entire proceeding involving multiple parties and claims, said order is not appealable unless the court makes an "express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). However, Rule 304(b)(1) also provides that a party may immediately appeal from certain types of orders without a special finding, including "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). The committee comments to Rule 304(b)(1) explain that the rule applies to orders that are final in character, such as "an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R.

304(b)(1), Committee Comments (rev. Sep. 1988); see also *In re Estate of Mueller*, 275 Ill. App. 3d 128, 139, 655 N.E. 2d 1040, 1048 (1995) (order denying petition to intervene in guardianship proceedings); *In re Estate of Ohlman*, 259 Ill. App. 3d 120, 124, 630 N.E.2d 1133, 1137 (1994) (order appointing plenary guardian for a disabled person). Under section 11a-14.1 of the Probate Act, the guardian is required to "monitor the placement of the ward [in a residential facility] on an on-going basis to ensure its continued appropriateness, and shall pursue appropriate alternatives as needed." 755 ILCS 5/11a-14.1 (West 2022).

¶ 23 Typically, an order is "final" if it "fixes absolutely and finally the rights of the parties in the lawsuit *** and disposes of the entire controversy; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *Pekin Insurance Co. v. Benson*, 306 Ill. App. 3d 367, 375, 714 N.E.2d 559, 565 (1999). Under Rule 304(b)(1), to satisfy the finality requirement, "[i]t is not necessary that the order resolve all matters in the estate, but it must resolve all matters on the particular issue." (Internal quotation marks omitted.) *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 84, 965 N.E.2d 1215.

¶ 24 OSG argues the trial court's November 14, 2022, order did not "finally" determine the rights or status of any party because the issue of placement remains pending under the court's jurisdiction. Specifically, OSG contends the order, by its terms, indicates it was not final in the following statement: "The placement is appropriate given *the current circumstances*." (Emphasis added.) OSG, citing *In re Mark W.*, 228 Ill. 2d 365, 375, 888 N.E.2d 15, 21 (2008), further asserts the court retains the right to revisit the issue of placement should circumstances change. OSG also emphasizes the guardian's continuing duty to monitor the issue of residential placement. See 755 ILCS 5/11a-14.1 (West 2022).

¶ 25　　　　　First, OSG's reliance on *Mark W.* is misplaced. In that case, the Illinois Supreme Court determined the trial court had the authority to appoint a GAL for an adjudicated disabled adult without first revoking the plenary guardian's letters of office. *Mark W.*, 228 Ill. 2d at 375. In reaching this conclusion, the supreme court explained, "Once a person is adjudicated disabled, that person remains under the jurisdiction of the court, even when a plenary guardian of the person has been appointed." *Id.* While we agree with OSG's contention James remains under the jurisdiction of the trial court as long as he remains disabled under the Probate Act—including on the matter of his placement—the trial court's general jurisdiction does not deprive *this court* of jurisdiction to review final orders entered throughout the guardianship proceedings under Rule 304(b)(1). *Mark W.* does not stand for the proposition a trial court's continued jurisdiction over the issue of placement precludes an appeal of a final placement decision.

¶ 26　　　　　To hold as the State suggests—*i.e.*, because of the trial court's continuing jurisdiction, no order of placement is ever final—would produce unintended results. Hypothetically, if the court ordered OSG to change a ward's placement over OSG's objection, OSG could not immediately challenge the ruling. Moreover, under the proposed rationale, a ward's placement decision would never be final until termination of the guardianship. Termination of the guardianship only occurs when the ward is determined to no longer be disabled or dies. See 755 ILCS 5/11a-20 (West 2022). An appeal to challenge a placement at that time would be useless and is counterintuitive to the ongoing duties of the guardian expressed in section 11a of the Probate Act to file reports and continually review the ward's placement. See *id.* § 11a-14.1 (duty to monitor ward's residential placement); *id.* § 11a-17(c) (authorizing the court to order the guardian to periodically report on the mental, physical, and social condition of the ward).

¶ 27    We conclude this court has jurisdiction to review the trial court's November 14, 2022, order under Rule 304(b)(1) because it finally disposed of the issue of whether it was in James's best interests to relocate him from a CILA to a skilled nursing facility. Stated differently, the order finally disposed of the "status"—*i.e.*, CILA placement versus nursing home placement—of a "party"—*i.e.*, James. See Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). The court's November 14, 2022, order was entered following a hearing on the issue of whether James should be relocated to a more restrictive placement than his current CILA. This meant the court's decision as to whether James would be relocated to a different type of residential facility based on his needs would not be changed unless OSG as guardian or the court itself specifically initiated proceedings to revisit the issue. Under these particular facts, we conclude the court's order meets the finality requirement for purposes of Rule 304(b)(1).

¶ 28                                          B. Standing

¶ 29    OSG also argues petitioner lacks standing to pursue this appeal and it should therefore be dismissed. We agree.

> "The doctrine of standing requires that a party, either in an individual or representative capacity, have a real interest in the action brought and in its outcome. The purpose of the doctrine is to ensure that courts are deciding actual, specific controversies and not abstract questions or moot issues. [Citation.] Standing 'is not simply a procedural technicality' [citation], but rather is an aspect or a component of justiciability. [Citations.]
>
>     The essence of the inquiry regarding standing is whether the litigant, either in an individual or representative capacity, is entitled to have the court decide the merits of a dispute or a particular issue. [Citation.] This court has repeatedly held

- 9 -

that standing requires some injury in fact to a legally recognized interest." *In re Estate of Wellman*, 174 Ill. 2d 335, 344, 673 N.E.2d 272, 276 (1996).

¶ 30 Illinois courts have interpreted sections 11a-10 and 11a-20 of the Probate Act as providing standing to non-parties to challenge in the circuit court the original order of guardianship, the adjudication of the ward's disability, revocation of letters of guardianship, and modifications of the duties of the guardian. See *Struck v. Cook County Public Guardian*, 387 Ill. App. 3d 867, 876, 901 N.E.2d 946, 953 (2008) (collecting cases); see also 755 ILCS 5/11a-10 (West 2022); *id.* § 11a-20. However, "an individual who is not the ward's guardian does not have standing to appeal a decision of the circuit court on behalf of the ward." *Struck*, 387 Ill. App. 3d at 877 (citing *In re Guardianship of Austin*, 245 Ill. App. 3d 1042, 1047, 615 N.E.2d 411, 414-15 (1993)).

¶ 31 We find the First District's standing analysis in *Struck*, 387 Ill. App. 3d at 877-78, to be instructive in this case. In *Struck*, the adult son of a disabled ward petitioned the trial court, *inter alia*, for visitation with the ward. *Id.* The court denied the petition, and the son appealed. *Id.* On appeal, the First District concluded the son lacked standing to appeal the court's order on the issue of visitation. *Id.* The First District specifically found, "Article 11a does not contain any provision providing that relatives can request visitation with the ward or challenge the guardian's individual decisions regarding visitation *or other matters concerning the ward*. 755 ILCS 5/11a-1 through 11a-22 (West 2006)." (Emphasis added.) *Id.* at 877. Furthermore, to the extent the son argued the public guardian's decisions were causing harm to the ward, the First District reiterated that it was the circuit court's duty to protect the ward from such harm. *Id.* While the son was entitled to "alert the circuit court to potential harm and ask the court to intervene," this did not "confer standing on [him] to challenge the guardian's decisions." *Id.* at 878.

¶ 32    Here, petitioner lacks standing to challenge any aspect of the trial court's November 14, 2022, order because it did not impact any legally recognized right belonging to her. As the First District observed in *Struck*, Article 11a of the Probate Act contains no provision authorizing a ward's relative to challenge the guardian's individual decisions on matters concerning the ward—in this case, James's continued placement at Avancer. See 755 ILCS 5/11a-1 to 11a-22 (West 2022)). Petitioner is not James's guardian, and she cannot challenge a decision of the guardian on his behalf. Like the son in *Struck*, we agree petitioner was permitted to "alert" the court to her concerns regarding whether James's current placement was meeting his needs—but this did not confer standing for her to challenge his placement on appeal. The trial court in the instant case took great care to ensure petitioner's concerns ("alerts") regarding James's placement were heard and evaluated by the GAL. However, because petitioner cannot raise any legally recognized injury in fact in either an individual or representative capacity for James, she has no stake in the outcome of these proceedings. Accordingly, we conclude the appeal must be dismissed. See *Struck*, 387 Ill. App. 3d at 879 (dismissing appeal in guardianship case for lack of standing). Additionally, petitioner's motion to reconsider this court's denial of her motion to supplement the record is denied.

¶ 33                         III. CONCLUSION

¶ 34    For the reasons stated, OSG's motion to dismiss the appeal is allowed.

¶ 35    Appeal dismissed.